**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee,**

v.

**Raymond WILLIAMS, Appellant.**

**No. 89–3177.**

United States Court of Appeals, Third Circuit.

Argued Dec. 6, 1989.

Decided Dec. 27, 1989.

Robert L. Tucker, Federal Public Defender, Thurston T. McKelvin (Argued), Asst. Federal Public Defender, U.S. Virgin Islands, for appellant.

Terry M. Halpern, U.S. Atty., Mark H. Bonner (Argued), Asst. U.S. Atty., U.S. Virgin Islands, for appellee.

Before GIBBONS, Chief Judge, MANSMANN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

On January 8, 1988, the government of the Virgin Islands charged Raymond Williams with a variety of felonies arising from an incident on January 1 in which Williams allegedly killed two individuals and seriously injured another. The trial commenced on November 16, 1988, and on November 24 a jury in the District Court of the Virgin Islands convicted Williams of second degree murder, voluntary manslaughter, attempted homicide, assault in the first degree, and the unlawful use of a deadly weapon during the commission of a violent crime. The district court sentenced him on the following day to sixty years of imprisonment. Williams appeals from the sentence, contending that he is entitled to a new trial. We will affirm.

### I.

Sometime during the evening of January 1, 1988, an argument broke out between Williams and the woman with whom he had lived for the past several months, Sandra Williams.[1] Appellant began beating Ms. Williams, who screamed for help. Ms. Williams' two brothers, Felix and Richard Pierre, as well as her 77–year–old aunt, Idona Williams, came to her aid. When they arrived, Williams attacked Richard Pierre with a hammer, who attempted to defend himself by brandishing a knife. Williams grabbed this knife and stabbed Idona Williams and Felix Pierre to death. He also stabbed Richard Pierre a number of times, causing permanent damage to Pierre's right arm. Williams was immediately arrested.

After formal charges were issued, Williams on January 28, 1988 filed notice of his intention to assert the insanity defense. The district court ordered the defendant to undergo a psychiatric examination to determine (a) whether there was any basis for his claim that he was legally insane at the time the crimes were committed, and (b) whether the defendant was mentally competent to stand trial. The ensuing psychiatric evaluation revealed that although Williams had a history of bouts with schizophrenia, there was no indication that this disorder either caused him to commit the criminal acts with which he was charged, or impaired his ability to stand trial. At Williams' request, the court ordered further psychiatric evaluation on June 9, which furnished the same results.

On November 16, 1988, Williams' trial commenced. Jury selection took place that morning, and was supervised by a United States magistrate, Geoffrey W. Barnard. Neither Williams nor the government objected to this arrangement. Once the jury was empanelled, the district judge took control of the proceeding. Before the trial continued, however, defense counsel raised for a third time the issue of Williams' mental competency, moving for yet another psychiatric examination. After hearing extensive testimony from Williams, the district court found him to be competent to stand trial, and accordingly denied his motion. The trial proceeded, and the following week Williams was convicted.

---

**1.** Sandra Williams and Raymond Williams are unrelated.

## II.

Three months after Williams filed his notice of appeal, the Supreme Court rendered its decision in *Gomez v. United States*, — U.S. —, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). In that case, the Court held that the Federal Magistrates Act, 28 U.S.C. § 636(b)(3), does not authorize federal magistrates to preside over jury selection in felony proceedings when a defendant affirmatively objects. Williams attempts to take advantage of *Gomez* by arguing that he is entitled to a new trial because the magistrate in his case lacked jurisdiction to supervise voir dire. In response, the government argues that Williams failed to object to the use of the magistrate, and that *Gomez* therefore cannot serve as a basis for relief. We are unpersuaded that the Supreme Court intended in *Gomez* to prohibit the use of a magistrate to conduct voir dire when a defendant consents, and thus we reject Williams' argument.

### A.  *The Federal Magistrates Act*

In 1968, Congress abolished the office of the United States commissioner and in its place erected the modern federal magistrates system. The main purpose of the Federal Magistrates Act, 28 U.S.C. §§ 631–639, was twofold: to improve the quality of the judicial officers serving just below the level of federal judges, and to drastically enlarge the responsibilities of those officers so as to relieve the heavy burdens on the federal docket that in 1968 had reached critical mass. As the House Report accompanying the bill explained:

> By raising the standards of the lowest judicial office and by increasing the scope of the responsibilities that can be discharged by that office, the system will be made capable of increasing the overall efficiency of the Federal judiciary, while at the same time providing a higher standard of justice at the point where many individuals first come into contact with the courts.

H.R.Rep. No. 1629, 90th Cong., 2d Sess. 3, *reprinted in* 1968 U.S.Code Cong. & Admin. News 4252, 4257.

To that end, the Federal Magistrates Act of 1968, Pub.L. No. 90–578, 82 Stat. 1107, *reprinted in* 1968 U.S.Code Cong. & Admin. News 1280 (codified as amended at 28 U.S.C. §§ 631–639), empowered the district courts to appoint United States magistrates "in such numbers and to serve at such locations within the judicial district" as the courts deemed appropriate, *id.* at § 631(a). Congress hoped to improve the quality of the magistrates by, among other things, requiring magistrates to be attorneys, *id.* at § 631(b)(1), strictly regulating other jobs that magistrates could hold, *id.* at §§ 631(c), 632(a), and abolishing the previous system of payment on a per-case basis, *id.* at § 634. Concomitant with these improvements in the professional atmosphere of the magistracy, the Act dramatically expanded the scope of duties that magistrates could perform. In addition to taking on the "powers and duties conferred or imposed upon United States commissioners," *id.* at § 636(a)(1), magistrates were empowered to serve as special masters in certain civil matters, to assist district court judges in the conduct of pretrial and discovery proceedings, and to conduct preliminary reviews of applications for post-trial relief. *Id.* at 636(a)(2)–(4); 18 U.S.C. § 3401(b). As presently amended, the Act now goes much further, empowering magistrates to conduct any civil trial on consent of the parties, 28 U.S.C. § 636(c), as well as to preside at criminal trials involving "minor offenses" so long as the defendant waives his right to the presence of a federal judge. 18 U.S.C. § 3401(b).

In addition to enumerating these powers, the Act also provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). In 1976, Congress promulgated a spate of modifications to the Federal Magistrates Act as part of its firm belief that the Act had achieved impressive success since 1968 and that it was time to increase even further the scope of responsibilities that could be delegated to federal magistrates. *See* H.R.Rep. No. 94–1609, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6164–

65. One of these modifications was to enhance the importance of the "additional duties" clause, which had been a part of the original legislation, by moving the provision to a separate subsection of the Act. *Id.* at 6172. In so doing, Congress hoped to imbue the system with greater flexibility by providing district court judges the opportunity to "continue innovative experimentations in the use of this judicial officer. At the same time, placing this authorization in a separate subsection emphasizes that it is not restricted in any way by any other specific grant of authority to magistrates." *Id.*

It can hardly be denied that the system created by the Federal Magistrates Act has exceeded the highest expectations of the legislators who conceived it. In modern federal practice, federal magistrates account for a staggering volume of judicial work. In 1987, for example, magistrates presided over nearly half a million judicial proceedings. *See* S.Rep. No. 100–293, 100th Cong., 2d Sess. 7, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5564. As a recent Senate Report noted, "[i]n particular, magistrates [in 1987] conducted over 134,000 preliminary proceedings in felony cases; handled more than 197,000 references of civil and criminal pretrial matters; reviewed more than 6,500 social security appeals and more than 27,000 prisoner filings; and tried more than 95,000 misdemeanors and 4,900 civil cases on consent of the parties." *Id.* at 5565. Given the bloated dockets that district courts have now come to expect as ordinary, the role of the magistrate in today's federal judicial system is nothing less than indispensible.

## B. *Gomez v. United States*

It was against this backdrop that the Supreme Court last term decided *Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). The defendants in that case objected to the district court's assignment of voir dire to a federal magistrate, requesting instead the presence of the district judge. These objections were overruled, and the defendants were convicted of the felonies with which they were charged. On appeal, the defendants argued that, at least in cases in which a defendant objects, a federal magistrate has no authority to preside over voir dire. The government disagreed, arguing that jury selection is an "additional duty" that may be delegated to a magistrate within the meaning of section 636(b)(3) of the Act.

In a unanimous opinion, the Supreme Court held that, absent consent from the defendant, Congress "did not contemplate the inclusion of jury selection in felony trials among a magistrate's additional duties." *Gomez*, 109 S.Ct. at 2247. At the outset, the Court made clear that its decision was impelled primarily by the constitutional implications of forcing a defendant in a felony proceeding to accept a magistrate at voir dire. Given the expansive scope of the "additional duties" clause, the Court agreed that "[t]he only legal constraint" on the assignments that may be delegated to a magistrate "must be found ... in the Constitution." *Gomez*, 109 S.Ct. at 2240–41. In this case, the Court reasoned, just such a constitutional problem arose, but because of the "settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question," *id.* at 2241, it was appropriate to reach a result on statutory grounds.

Looking to the "context of the overall statutory scheme," *id.*, the Court concluded that the "additional duties" clause did not include voir dire in cases in which the defendant objects. First, the Court reasoned, a trial is thought to "commence" at the selection of the jury for certain constitutional purposes, including a criminal defendant's right to be present at his trial. *Id.* at 2246. Second, the Court expressed concerns not only about the absence of any provision establishing the applicable standard of review to be exercised when a magistrate conducts voir dire, but also about the inherent limits in exercising such review over a process that relies so heavily on non-verbal cues. *Id.* at 2246–47.

The Court did not, however, reach the question presented in this case: whether the Federal Magistrates Act permits a magistrate to preside over the selection of

a jury when a defendant consents. In *Gomez*, the Court framed the issue as "whether presiding at the selection of a jury in a felony trial *without the defendant's consent*" is an additional duty within the meaning of the Federal Magistrates Act. *Id.* at 2239 (emphasis added); *see also id.* at 2248 (rejecting the government's harmless error analysis on the grounds that it "does not apply in a felony case in which, *despite the defendant's objection* and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury"). *Gomez* thus left open the question whether a defendant's consent makes a difference as to whether a district court may assign voir dire to a magistrate. The courts of appeals that have addressed this issue have thus far come to different conclusions. *See, e.g., United States v. Lopez–Pena*, 890 F.2d 490 (1st Cir.1989) (holding that assignment of jury selection to magistrate did not amount to plain error); *United States v. Mang Sun Wong*, 884 F.2d 1537, 1545–46 (2d Cir.1989) (recognizing a consent exception to *Gomez*); *United States v. France*, 886 F.2d 223 (9th Cir.1989) (holding that *Gomez* provides relief even where the defendant consented to the use of a magistrate).

### C. *The Contemporaneous Objection Rule*

The government asserts that Williams' failure to object to the use of a magistrate at voir dire extinguished his right to challenge that procedure on appeal. In support of this position, the government relies on the "contemporaneous objection" rule of appellate review, which requires a party to a judicial proceeding to object contemporaneously to any matter believed to be erroneous, at peril of relinquishing the opportunity to challenge that matter on appeal. *See United States v. Gagnon*, 470 U.S. 522, 527–31, 105 S.Ct. 1482, 1484–87, 84 L.Ed.2d 486 (1985) (per curiam); *see also United States v. Urian*, 858 F.2d 124 (3d Cir.1988) (defendant failed to preserve the issue whether the district court erroneously refused to ask certain questions of the prospective jurors); *Government of the Virgin Islands v. Forte*, 806 F.2d 73 (3d

Cir.1986) (failure to object relinquishes right to appeal the question whether the prosecution misused its peremptory challenges).

A long-standing exception to this rule, however, permits a party to raise jurisdictional objections at any time, irrespective of consent. As the Supreme Court recently commented, "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)). *See also Lunderstadt v. Colafella*, 885 F.2d 66, 69 (3d Cir.1989). Hence, a litigant must generally object to matters he wishes ultimately to appeal, but if the defect in question relates to the court's jurisdiction, the litigant may object at any time.

■ We find little difficulty in concluding that the claim advanced by Williams is jurisdictional in nature, and thus is immunized from the general rule of waiver. The jurisdiction of federal magistrates is defined by the Federal Magistrates Act. As this court has explained:

> [T]he jurisdiction of the magistrate to decide a case is not based solely on the consent of the parties, but derives from a proper designation by the district court. Because district court jurisdiction is statutory, its ability to make a proper designation of, and thereby to confer jurisdiction on, a magistrate is also a creature of statute.

*In re Morrissey*, 717 F.2d 100, 102 (3d Cir.1983). *See also Gomez*, 109 S.Ct. at 2248 (commenting that a criminal defendant has a "right to have all critical stages of a criminal trial conducted by a person *with jurisdiction to preside*. Thus harmless-error analysis does not apply in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, *an officer exceeds his jurisdiction by selecting a jury*." (emphasis added)). If this is true—if a magis-

trate's jurisdiction depends upon the Federal Magistrates Act—then a challenge under the Act to the use of a magistrate in a certain way qualifies by definition as a jurisdictional objection. In this case, Williams' claim smacks of a jurisdictional challenge: according to Williams, jury selection is "ultra vires," so to speak, with respect to the duties that a magistrate may perform. This is plainly a jurisdictional objection, and thus may be raised on appeal even though Williams failed to assert that objection at trial. We thus turn to the merits of Williams' claim that magistrates lack the authority to conduct voir dire when a defendant consents.

### D. Consent

Section 636(b)(3) of the Federal Magistrates Act provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). The plain language of this statute clearly confers upon federal magistrates the jurisdiction to assume virtually any judicial duty assigned to them by the district courts, so long as that assignment is neither unconstitutional nor a violation of some other federal law. See Gomez, 109 S.Ct. at 2241 (commenting that "[t]he only legal constraint on many other assignments not expressly barred ... must be found, according to the literal reading, in the Constitution."). Thus, unless Williams can establish that the absence of an Article III judge during the selection of his jury was "inconsistent with the Constitution [or] the laws of the United States," it cannot be said that the conferral of that duty upon a federal magistrate exceeded the boundaries established by section 636(b)(3) of the Federal Magistrates Act.

In light of this express language, we do not read Gomez to prohibit delegations that are neither constitutionally prohibited nor

violative of some collateral statutory provision. We find no indication in Gomez that the Supreme Court intended to contradict section 636(b)(3) in any such way. Quite the contrary, the Court's opinion is especially careful to underscore the fact that its decision to limit a magistrate's duties under the Act is impelled by the obvious constitutional difficulties with forcing a criminal defendant to accept a magistrate at voir dire. The Court, for example, consciously rests its decision upon the "settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." Gomez, 109 S.Ct. at 2240–41. In short, we read Gomez consistently with the plain language of the Act: so long as a particular delegation of a judicial function is "not inconsistent with the Constitution and laws of the United States," that delegation cannot be said to transcend the jurisdiction of the federal magistracy. 28 U.S.C. § 636(b)(3).

■ In this case, Williams has failed to indicate in what sense the district court violated the Constitution or the laws of the United States when, in the absence of any objection on Williams' part, the court permitted a federal magistrate to supervise voir dire. No statute of which this court is aware prohibits federal magistrates from conducting voir dire when a defendant consents. Cf. In re Morrissey, 717 F.2d 100 (3d Cir.1983) (prohibiting the delegation of bankruptcy appeals to a magistrate in light of 28 U.S.C. § 1334(c), which explicitly proscribes such delegation).

Nor do we perceive any constitutional difficulty with allowing a district court to delegate this function to a magistrate in the absence of any objection by the defendant.[2] The constitutional right alluded to in Gomez was the right of a criminal defen-

---

**2.** The use of a magistrate in this capacity can hardly be said to raise any conceivable separation of powers problem: the Supreme Court has twice held that the federal magistracy is a permissible "adjunct" court. See United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (upholding the Federal Magistrates Act against the claim that it violated

Article III by conferring judicial authority in a non-Article III tribunal); see also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (reaffirming Raddatz on the grounds that the Federal Magistrates Act reserves to the district courts the "essential attributes" of adjudication).

dant in a felony proceeding to demand the presence of an Article III judge at voir dire. Here, no such demand was voiced. Reliance on *Gomez* is thus misplaced. For Williams' claim to ring true, it would have to be the case that *Gomez* created a jurisdictional requirement that an Article III judge be present *in all cases*, irrespective of consent. We do not read *Gomez* this way. We read *Gomez* as recognizing a right to demand the presence of an Article III judge at voir dire. The recognition of this right in no way suggests that it may not, as with most rights enjoyed by criminal defendants, be waived.[3] Indeed, the Court has long regarded consent to make all the difference when it comes to many of the constitutional rights afforded criminal defendants, including, among others, the right to the assistance of counsel, *see Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the right to confront one's adverse witnesses, *see Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966), and the right to a trial by jury, *see Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). If it is not unconstitutional for a criminal defendant to waive these important rights, then neither can it be unconstitutional for a defendant to waive his right to the presence of an Article III judge at the selection of his jury. Absent a constitutional or statutory bar to waiver of this sort, we must conclude that the assignment of voir dire to a magistrate on consent of the defendant is "not inconsistent with the Constitution and laws of the United States," and that, therefore, such a delegation plainly qualifies as an "additional duty" for purposes of section 636(b)(3).

We are confident, moreover, that this reading of section 636(b)(3) strikes the optimal balance between the interests of the criminal defendant and the policies that undergird the Federal Magistrates Act. As a whole, the Federal Magistrates Act is intended to relieve the district courts of certain ministerial and subordinate duties that often distract the courts from matters that require their immediate and undivided attention. The "additional duties" clause performs a particularly important role in this respect, since it permits the courts to "continue innovative experimentations" in the use of magistrates as a means to improve the efficient administration of the courts' dockets. *See* H.R.Rep. No. 94–1609, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6164–65. Now, it is certainly true, as the Supreme Court held in *Gomez*, that this important policy must be balanced against a criminal defendant's constitutional interest in requesting the presence of a judge at all critical stages in his felony trial, including the selection of his jury. However, we do not see how this admittedly important interest is threatened by a rule that permits a defendant, in full consultation with his attorney, to consent to this use of a magistrate. Rather, deference to the defendant's choice seems to us to achieve the best of both possible worlds. If a criminal defendant, together with his attorney, believes that the presence of a judge best serves his interests during the selection of the jury, then *Gomez* preserves his right to object to the use of a magistrate. Where, on the other hand, the defendant is indifferent as to whether a magistrate or a judge should preside, then it makes little sense to deny the district court the opportunity to delegate that function to a magistrate, particularly if such a delegation sensibly advances the court's interest in the efficient regulation of its docket. Absent objection, there is no reason to think that such a delegation is likely to injure the defendant in any palpable sense. Magistrates have proven to be eminently qualified to handle matters of this nature, and there is therefore no cause to suspect that they are categorically ill-suited to preside at the selection of a defendant's jury so long as the defendant consents.

---

**3.** Persons prosecuted in the Virgin Islands do not have a right to a trial before an Article III judge at voir dire or any other stage. We are dealing, however, with the impact of *Gomez* as a matter of statutory interpretation. The statute would mean the same in the Virgin Islands or in the territory of the States.

In sum, then, we hold that section 636(b)(3) of the Federal Magistrates Act permits a district court to delegate voir dire to a magistrate as an "additional duty," so long as the defendant expresses no objection. We accordingly reject Williams' argument that his jury was improperly empanelled.

### III.

Williams next argues that the District Court erred when it refused on the first day of trial to order a third psychiatric examination to determine whether he was competent to stand trial. However, the standard of review to be exercised when evaluating a district court's factual ruling on a defendant's competency is exceedingly narrow: according to established precedent, a determination of competency "is a finding of fact by the trial court which may not be set aside unless it is clearly erroneous." *United States v. Green*, 544 F.2d 138, 145 (3d Cir.1976).

█ In this case, there has been no indication that the district court committed a clear error when it adjudged Williams competent to stand trial. Two separate psychiatric examinations concluded that Williams was capable of understanding the charges against him and of assisting in his defense. On the first day of trial, moreover, the court heard testimony from Williams himself. Observing his conduct and demeanor first hand, the district court rejected his motion for a third examination. Nothing in the record provides a basis for questioning this factual finding. Williams' competency claim is accordingly rejected.

### IV.

With Williams' consent, the voir dire of the jury was properly conducted by the United States magistrate. The Court's competency finding is not clearly erroneous. The judgement of sentence will therefore be affirmed.

MANSMANN, Circuit Judge, Concurring.

While I concur in the result reached by the panel majority affirming Williams' conviction, I write separately because I do not rely on the reasoning of the majority in reaching this result.

The ultimate disposition of this case turns upon the reach of the Supreme Court's ruling in *Gomez v. United States*, — U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). The majority reads *Gomez* as having no application to those cases in which a defendant consents to a magistrate presiding over voir dire in his felony trial. I do not believe that *Gomez* can be so narrowly read, and, therefore, find it necessary to address issues not reached by the majority.

As the majority recognizes, the question raised in *Gomez* was, at base, one of jurisdiction: Under the terms of the Federal Magistrates Act, what is the appropriate role of the magistrate in selecting a jury in a felony matter? The Court in *Gomez* examined 28 U.S.C. § 636(b) (1982), the so-called "additional duties" clause of the Federal Magistrates Act ("The Act"), and concluded that this section does not authorize federal magistrates to conduct jury selection and voir dire in felony trials.[1] Jury selection was not within the "range of duties' that Congress intended magistrates to perform." *Id.*, 109 S.Ct. at 2242 (quoting *Mathews v. Weber*, 423 U.S. 261, 270, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976)).

In reaching this result, the Court relied on three factors. First, it emphasized that by the terms of the Act Congress had specifically authorized magistrates "to conduct trials of civil matters and of minor criminal cases" and concluded that this "carefully defined grant of authority" "should be construed as an implicit withholding of authority to preside at a felony trial." 109 S.Ct. at 2245. Second, the Court discussed in detail the place of jury selection in the context of the criminal trial. It noted that jury selection is a "critical stage of the criminal proceeding," with voir

---

1. The Court did not consider whether Congress might constitutionally authorize magistrates to preside over voir dire. The opinion was limited to an examination of the Act.

dire the "primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial or political prejudice." *Id.* at 2246 (citing *Lewis v. United States*, 146 U.S. 370, 374, 13 S.Ct. 136, 137–38, 36 L.Ed. 1011 (1892), and *Rosales–Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981)). Finally, the Court addressed the role of the individual who conducts voir dire in evaluating "not only spoken words but also [the] gestures and attitudes of all participants to ensure the jury's [impartiality]," and expressed "serious doubts that a district judge could review the[se] function[s] meaningfully." 109 S.Ct. at 2247. In light of all of these factors, the Court concluded that magistrates have no power to preside over jury selection in felony cases.

The majority recognizes that *Gomez* rests on jurisdictional grounds but seeks to confine the Court's holding to those cases, like *Gomez*, where the defendant affirmatively objected to the magistrate's presence. Under the reasoning of the majority, where a defendant objects to the presence of a magistrate, § 636(b) of the Act withholds authority from the magistrate to preside. Yet, where a defendant fails to object or affirmatively consents to the presence of the magistrate, delegation of the jury selection "plainly qualifies as an 'additional duty' for purposes of section 636(b)(3)." Majority Opinion at 311. I do not believe that this conclusion is "plain" or that consent can confer jurisdiction where the Act withholds it. The reasoning of the *Gomez* opinion fails to support the majority's conclusion.

I believe that the better approach is that adopted by the Court of Appeals for the Ninth Circuit in *United States v. France*, 886 F.2d 223 (9th Cir.1989), and of the dissent in *United States v. Mang Sun Wong*, 884 F.2d 1537 (2d Cir.1989). *See also United States v. Rubio*, 722 F.Supp. 77 (D.Del.1989). While the majority approach is convenient, disposing of a number of cases pending on direct appeal at the time of the *Gomez* decision, in order to be true to the holding of *Gomez*, I believe that analysis of these cases cannot begin and end at the point of consent.

Having reached the conclusion that consent is irrelevant for jurisdictional purposes and that *Gomez* mandates exclusion of the magistrate from jury selection in all felony cases, I would next examine the issue of retroactivity. In brief, I believe that *Gomez* should be accorded retroactive effect in all cases pending on direct appeal. *See United States v. France, supra,* and *United States v. Lopez–Pena*, 890 F.2d 490 (1st Cir.1989).[2]

Once retroactivity is established, the inquiry becomes whether *Gomez* requires reversal *per se* or whether pending cases may be evaluated under the plain error doctrine. It is under the plain error doctrine that a defendant's consent becomes relevant. The Court of Appeals for the Ninth Circuit in *United States v. France, supra,* concluded that the Supreme Court in *Gomez*, by precluding harmless error analysis, had articulated a *per se* rule of reversal applicable to all cases not final when *Gomez* was decided. This *per se* rule would apply regardless of the defendant's consent.

The Court of Appeals for the First Circuit in *United States v. Lopez–Pena, supra,* however, rejected any notion of a *per se* rule and applied a plain error analysis. On the facts before it, the court found no plain error:

> The magistrate's preliminary comments to the jury were standard, and defendants voiced no objection (then or now) to any portion of what was said—or not said—in that matter. Questions were addressed to the venire from a prepared form. Once the jury was chosen, the judge—not the magistrate—gave the start-of-trial instructions. From aught that appears, the empanelment was scru-

---

**2.** We have decided a number of cases discussing the retroactive effect of substantive rather than procedural rulings involving statutory interpretation. *See, Diggs v. Owens*, 833 F.2d 439 (3d Cir.1987), and *United States v. Osser*, 864 F.2d 1056 (3d Cir.1989). These cases, too, favor retroactivity.

pulously fair and the jury was not tainted in any way.

*Id.* at 496. The court summarized its conclusions regarding the application of *Gomez* in this way:

> [W]e hold that the *Gomez* doctrine applies retroactively to nonfinal convictions, that is, to felony cases pending on direct appeal. But in this case the claimed error went unremarked.... Most especially, neither the integrity of the trial nor the accuracy of the guilty verdict has been impeached. Inasmuch as appellants have been unable to show prejudice flowing from the magistrate's selection of the jury, their motions to remand must be denied.

*Id.* at 498. A plain error analysis in the case now before us would yield the same result. All that remains, in my view, is to determine whether, consistent with our own precedent, we may apply the plain error analysis to those pending cases implicating *Gomez.*

Our decision in *United States v. Thame,* 846 F.2d 200 (3d Cir.1988), is dispositive. In *Thame,* we specifically addressed the question of whether the Supreme Court's conclusion that a particular constitutional error can never be harmless precludes consideration of a case involving such an error under the "plain error" standard of review. We concluded that the plain error analysis is *not* precluded. We first drew a distinction between plain and harmless error:

> The test for harmless error is not the same as the test for plain error.... The harmless error doctrine allows convictions to stand despite properly preserved claims of constitutional error in the exceptional circumstance where the reviewing court can conclude that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967). The *plain error doctrine* allows convictions to be reversed even in the absence of properly preserved claims of error where the reviewing court can conclude that fundamental fairness so requires.

*Id.* at 207. Then, most importantly for our purposes, we made the following statement

which suggests how this case might be analyzed in light of *Gomez:*

> The constitutional nature of the error certainly makes it easier to conclude that fundamental fairness requires reversal. Nevertheless, concluding that any time a constitutional claim is at issue the *Chapman* standard applies to the plain error determination collapses the plain error and harmless error doctrines into one and "threatens to render meaningless the contemporaneous-objection requirement in the context of constitutional error." *United States v. Robinson,* [485] U.S. [35], [36], 108 S.Ct. 864, 871, 99 L.Ed.2d 23 (1988) (Blackmun, J., concurring and dissenting).... [A]lthough we do not believe that the error was sufficiently minor to be harmless beyond a reasonable doubt, we also do not believe that it was sufficiently minor to be harmless beyond a reasonable doubt, we also do not believe that it was sufficiently major that a miscarriage of justice will result if the conviction is not reversed.

*Id.*

Thus, simply because the Supreme Court concluded that a *Gomez* error may never be harmless, it does not follow that every case involving jury selection by a magistrate where there was no objection must be reversed.

In our Circuit the role of a court undertaking a plain error analysis is:

> [T]o look on a case-by-case basis to such factors as the obviousness of the error, the significance of the interest protected by the rule that was violated, the seriousness of the error in the particular case, and the reputation of judicial proceedings if the error stands uncorrected—all with an eye toward avoiding manifest injustice.

*Id.* at 205.

In the case now under consideration, the error claimed was not obvious; prior to *Gomez* it was common practice for magistrates in the Virgin Islands and in many other jurisdictions to conduct voir dire in felony cases. (Indeed, as the majority points out, in the Virgin Islands defendants do not even have the benefit of Article III

judges presiding at trial since the judges sitting there are empowered under Article I.) Despite occasional challenges, the practice was upheld in the great majority of cases. While the interest protected by the rule (the right of a defendant to have voir dire conducted by a person with jurisdiction to preside) is important, there is not the slightest hint here that the defendant expressed discontent at having the magistrate preside or that any prejudice resulted. There has been no manifest injustice and the reputation of the judicial proceedings is intact.

For all of the foregoing reasons I concur in the result reached in this matter but believe that *Gomez* requires a different analysis than that undertaken by the majority.