## GOVERNMENT OF THE VIRGIN ISLANDS

v.

## PANIAGUA, Vargas.

### Appeal of Vargas PANIAGUA.

### No. 90–3423.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Dec. 4, 1990.

Decided Dec. 19, 1990.

---

Robert L. Tucker, Federal Public Defender, Andrea L. Smith, Asst. Federal Public Defender, Charlotte Amalie, St. Thomas U.S.V.I., for appellant.

Terry M. Halpern, U.S. Atty., Hugh P. Mabe, III, Asst. U.S. Atty., Charlotte Amalie, St. Thomas, U.S.V.I., for appellee.

Before HIGGINBOTHAM, Chief Judge, and GREENBERG and COWEN, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Appellant, Vargas Paniagua, appeals from an order of June 19, 1990, denying his motion to dismiss the information in this case on the ground of double jeopardy. The appeal is predicated principally on the circumstance that his first trial was terminated when Magistrate Barnard rather than a district judge declared a mistrial. We have jurisdiction under 28 U.S.C. § 1291 as the order is final under the collateral order doctrine. *United States v. Ciancaglini*, 858 F.2d 923, 926 (3d Cir. 1988). We are exercising plenary review, as we are deciding this case through the application of legal precepts.

The facts as germane to this appeal are as follows. A five count information was filed in the District Court of the Virgin Islands by the United States Attorney charging Paniagua with mayhem, three counts of assault, and possession of a deadly weapon during the commission of a crime of violence. *See* V.I.Code Ann. tit. 14, §§ 1341(a)(2), 295(3), 297(2), 297(4), and 2251(a)(2) (1964 & Supp.1989). On April 17, 1990, Magistrate Barnard, with the express consent of the parties, presided over jury selection.

The receipt of evidence was started and completed on May 9, 1989, with a district judge presiding. After the completion of the testimony, the district judge instructed the jury and, during the course of the afternoon, answered a question from it. Later the district judge told the attorneys that: "The Magistrate has graciously agreed to take the verdict if it goes on. Any objection for the Government?" The assistant United States attorney responded "No" and the assistant federal public defender, representing Paniagua, then said "I don't think it will be very long." While that response did not directly address the judge's question, it was taken by the parties as an agreement to his request and Paniagua does not suggest otherwise on this appeal.

The jury was unable to reach a verdict on May 9, 1989, and thus Magistrate Barnard, at the jury's request, and with no objection from the parties, recessed the deliberations until the following day. On May 10, 1989, the jury sent the magistrate a note reciting that it could not reach a unanimous verdict. The assistant United States attorney then

requested that the magistrate give a modified *Allen* charge but the assistant federal public defender said:

> Your Honor, I would first comment that the note from the jury is somewhat ambiguous. It didn't say verdict in total, that when the Court brings them in, you can inquire whether they can reach a verdict as to any of the counts, and depending on their answer, of course, ask them if they think there is any possibility, and if not, we would object to giving them an Allen charge and have you declare a mistrial, if they so say, if they are unable to reach a verdict, and enter the judgment on the count if they so say.

App. at 67.

The magistrate then said that he would ask the foreperson if an additional opportunity to deliberate was necessary and if "they feel there is no benefit of that, I will discharge it. If they feel there would be some benefit to that, I would give the *Allen* charge. I will put them in the box and depending on what they are advised, I will advise you." The public defender then said that "just so the record is clear, our objection to modified *Allen*."

The jury was then brought into the box and the foreperson said it had reached a verdict on only one count. The magistrate, however, did not take the verdict on that count but instead gave the jury a modified *Allen* charge. *See* Devitt and Blackmar, Federal Jury Practice and Instructions § 18.15 (1977). Several hours later, after the jury advised the magistrate it was still unable to reach a verdict, he declared a mistrial. The following then ensued:

> THE COURT: Well, this case will be considered a mistrial. What we will do, Mr. Mabe [the assistant United States attorney]? Do you intend to retry this case?
>
> ATTORNEY MABE: Yes, Your Honor.
>
> THE COURT: We have a new jury panel coming in beginning with the May 22 trial calendar. What we will do, we will put this case on that calendar and we will make a decision at that time as to when we will try it. I am not sure it will be retried in the May 22 calendar. I don't want to lose track of it in any event.
>
> At that time of the calendar call, your office should have some position on whether, indeed, you intend to retry it and when you propose to do that. Mr. Zolezzi [the assistant federal public defender], you will probably have something to say about that.
>
> ATTORNEY ZOLEZZI: Yes, Your Honor, in fact, because of some of the things that have developed in the trial, we may still be asking for a continuance. We now have apparently some leads on some of the missing witnesses we feel will be beneficial, but they are not here. They are State-side.
>
> THE COURT: We will put it on that calendar. We will keep Paniagua on the same release pending retrial.
>
> ATTORNEY MABE: We will anticipate that, as Mr. Zolezzi has mentioned, the need for some additional time to attempt to locate some of the witnesses and also the victim in case was going back into the hospital for treatment, and I am not sure what his condition is going to be between now—
>
> THE COURT: The reason why I am putting it on here is to keep track.
>
> ATTORNEY MABE: I understand.
>
> THE COURT: You understand we had another retrial that resulted in speedy trial difficulty because it wasn't properly restored to the trial calendar? I don't want this to happen in this case. Unless there is anything else, we will adjourn.

App. at 71–73.

■ On June 27, 1989, Paniagua filed a motion "to bar the pending prosecution and dismiss the Information herein on double jeopardy grounds." In his motion he relied on *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), decided on June 12, 1989, after the mistrial was declared. In *Gomez* the Court held that the Federal Magistrates Act, 28 U.S.C. § 636(b)(3) does not authorize federal magistrates to preside over jury selection in felony proceedings over a defendant's affirmative objection. In Paniagua's supporting memorandum, after discussing

cases concerning the powers of a magistrate, he "pause[d] here to reiterate that while he did not object to the magistrate receiving the verdict, he did object to the giving of the supplemental instructions." App. at 45. Furthermore, he urged that it was necessary for a district judge to be present when the jury announced that it had reached a verdict on one count but was unable to do so on the others.[1] Paniagua also contended that the magistrate had no power to declare a mistrial, his actions were more than "ministerial," and "his actions should be held null and void." He urged that he had a "valued right to have the jury of his choosing decide his guilt or innocence" and that the district judge was deprived of his option to declare a mistrial as that right was taken from him by the magistrate when he instructed the jury and declared a mistrial. The remedy he sought was a bar of the retrial.

In its answering brief the government contended that Paniagua never objected to the magistrate's actions in the sense that he did not claim that the magistrate did not have the authority to act on the matters in dispute. It further contended that even if there had been a *Gomez* violation, Paniag-

ua's remedy was a new trial and that was what he was getting.

The district court ruled on the motion in a memorandum of decision dated June 19, 1990. It concluded that *Gomez* had precluded a magistrate from presiding over jury selection for three reasons. First, the Federal Magistrates Act only authorized magistrates to conduct civil matters and minor criminal trials and thus should be construed as implicitly withholding the authority to preside at a felony trial. *Gomez*, 109 S.Ct. at 2245. Second, jury selection is a critical stage of the trial. *Id.* at 2246. Third, jury selection requires observation of witnesses, credibility determinations and weighing of contradictory evidence, actions akin to dispositive matters under the Federal Magistrates Act subject to plenary review by the district court. 28 U.S.C. § 636(b)(1)(B). The nature of jury selection is such that it is doubtful that a magistrate's determination could be meaningfully reviewed on a plenary standard. 109 S.Ct. at 2247.

The district court distinguished *Gomez* as it concluded that

accepting a communication from the jury, restating the substance of the court's charge, and declaring a mistrial

---

1. Paniagua's memorandum filed in the district court includes an essentially incomprehensible explanation of his call for a mistrial in the district court. It indicates, with respect to the jury's note that it was unable to reach a verdict, as follows:

    Defendant Paniagua pauses here to reiterate that while he did not object to the magistrate receiving the verdict, he did object to the giving of the supplemental instructions. Paniagua also voiced concern over the ambiguity of the jury's note. There were five counts in the information and, as the colloquy between the magistrate and the jurors subsequently revealed, they declared that they had reached a verdict on one count and that the rest 'were undecided.' (Tr. 6). Therefore, Paniagua's earlier (and conditional) request for the magistrate to declare a mistrial was obviously rendered inapplicable when the foreperson announced that the jury had in fact reached a verdict as to one of the counts.

    App. at 45.

    In an accompanying footnote in Paniagua's memorandum he wrote:

    Counsel does not agree that he said 'we would object to giving them an Allen charge and have you declare a mistrial' (Tr. 6).

    Counsel called the court reporter after filing the Motion in this cause and had him read his notes to counsel. Counsel contemporaneously made his own notes as the court reporter read the trial notes as follows: 'we would object to Allen charge and direct a mistrial.' *Counsel's recollection was that he was objecting to the declaring of a mistrial as to any counts in which a verdict has not been reached.*

    App. at 45 (emphasis supplied).

    If counsel was objecting to a mistrial in any count in which a verdict had not been reached but he had made, as he puts it, an "earlier (and conditional) request for the magistrate to declare a mistrial" then it must be that Paniagua intended for the magistrate to believe that he wanted a mistrial on the count in which a verdict had been reached. We do not, however, dwell on the point as Paniagua has not made a motion to correct or modify the record as provided in Fed.R.App.P. 10(e). Thus, we are accepting as accurate the transcript of the district court proceedings which shows that Paniagua asked unambiguously for a mistrial. We also note that in his brief on this appeal Paniagua does not urge that he objected to a mistrial at any time in the district court. *See* Brief at 3.

are within the range of duties that Congress permits magistrates to perform. They do not involve the delicate observation of demeanor, credibility, attitude, and physical characteristics that jury selection and voir dire require and that the *Gomez* Court found incapable of meaningful review.... By scrutinizing transcripts either during jury deliberations or on post-trial motions, a trial judge can meaningfully review a magistrates's action on jury notes and questions, a magistrate's jury instructions, and a magistrate's declaration of mistrial. Such meaningful review can also be performed at the appellate level.

App. at 18–19 (omitting citations).

The court also indicated that "the magistrate apparently maintained communications with the district judge throughout jury deliberations."[2] It also pointed out that Paniagua had not been "forced to accede to the magistrate's participation in the latter stages of the proceeding" and that, in particular, he did not object to the dismissal of the jury and the declaration of the mistrial. Thus, it found that Paniagua's constitutional rights had not been violated. The court noted, citing Judge Mansmann's concurring opinion in *Government of Virgin Islands v. Williams*, 892 F.2d 305, 312, 314–15 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2211, 109 L.Ed.2d 537 (1990), that even if there was an error it was not obvious at the time as *Gomez* had not yet been decided. Finally, the district court concluded that "the decision to declare a mistrial ... was a proper exercise of discretion" as there was a "manifest necessity" to do so as the jury could not reach a verdict. *See, e.g., United States v. Coleman*, 862 F.2d 455, 460 (3d Cir.1988),

*cert. denied*, 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989). This appeal followed.

■ It is essential to consider what is and what is not before the court on this appeal. Paniagua indicates that the issues are whether the Federal Magistrates Act permits a district court to delegate to a magistrate "substantive trial duties, including receiving from and responding to a jury note, supplemental charging of the jury, hearing and ruling on counsels' arguments therein, and exercising discretion by declaring a mistrial" and "[w]hether the Double Jeopardy Clause bars [his] reprosecution ... if the Federal Magistrates Act does prohibit the delegation of the above described duties to a magistrate." Thus, he does not suggest that if the magistrate had the authority to declare a mistrial he abused his discretion in doing so.

But the issues are not nearly as broad as Paniagua suggests. He was, after all, not convicted at his first trial and there is therefore no appeal pending from any order or disposition at that trial. Rather, the appeal is from the order of June 19, 1990, denying his motion to dismiss the information and refusing to bar the second trial. Accordingly, the proceedings at the first trial are germane to this appeal only insofar as they relate to the claim that the second trial is barred by the Double Jeopardy Clause. Of course, it was the termination of the first trial without a final judgment which has given rise to the double jeopardy claim as that claim is predicated on Paniagua's "valued right to have his trial completed ..." at the first proceeding. *See Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717

2. We are not certain as to why the court believed that as we are unable to find support for the assertion in the record. The district judge who rendered the decision on the motion to dismiss the information was a visiting judge in the District of the Virgin Islands. He pointed out that the trial judge had his duty station on St. Croix whereas this trial was held on St. Thomas and that at the time of the trial there was a vacancy for the district judgeship in St. Thomas. Thus, the judge went back and forth between the two islands, leaving ministerial functions to magistrates. This case demonstrates the difficulties inherent in that situation. This vacancy problem has been greatly exacerbated by the untimely death of the trial judge, Honorable David V. O'Brien, so that there are now vacancies for both authorized judgeships on the Virgin Islands. At this time the situation requires the assignment of judges from other districts to the Virgin Islands, inconveniencing the judges and depriving their own districts of their presence. Furthermore, while the judges have performed outstanding service in the Virgin Islands, inevitably the coming and going of judges has led to significant problems.

(1978). It accordingly follows that the only issue before us relates to the order for the mistrial as it was only that order which precluded the completion of the first trial.[3]

On the merits we are constrained to express the most serious reservations regarding the authority of a magistrate under the Federal Magistrates Act to declare a mistrial in a felony case. It seems to us that a substantial argument can be made that there can be no more core exercise of Article III judicial power than a determination to declare a mistrial in a felony case, at least if the basis for the mistrial is a determination that a jury is unable to reach a verdict. While we agree with the district court that "[b]y scrutinizing transcripts either during jury deliberations or on post-trial motions, a trial judge can meaningfully review a magistrate's action on jury notes and questions, a magistrate's jury instructions, and a magistrate's declaration of mistrial," we do not see the significance of that statement in the context of this case with respect to the mistrial order. Obviously, the only review of a mistrial order could be after a trial and that review could not result in appropriate relief if the district court concluded that a mistrial had been incorrectly ordered, for it could not be seriously suggested that the original jury could be reassembled to continue its deliberations. *See Government of Virgin Islands v. Smith*, 558 F.2d 691, 693–94 (3d Cir.), *cert. denied*, 434 U.S. 957, 98 S.Ct. 486, 54 L.Ed.2d 316 (1977). Furthermore, we do not understand how the procedure followed in this case can be reconciled with Fed.R.Crim.P. 25, as that rule contemplates the substitution of judges by reason of "absence" in a criminal case only "after a verdict or finding of guilt."

Ultimately, though, we decide this case on very narrow grounds and accordingly we do not address a magistrate's authority to grant a mistrial over a defendant's objections or silence. In *Government of the Virgin Islands v. Williams*, 892 F.2d 305, we held that, as happened there, the Feder-

al Magistrates Act, 28 U.S.C. § 636(b)(3), permitted a district court to delegate voir dire to a magistrate provided the defendant expressed no objection to the procedure and thus we affirmed the judgment of conviction. Here there are even more compelling reasons in the face of a challenge to a magistrate's authority than in *Williams* to affirm the order under review. In *Williams* the defendant did not object to the jury selection by the magistrate, thus implicitly consenting to the magistrate conducting the proceeding. But Paniagua went further than the defendant in *Williams.* When the jury returned its note indicating that it was divided on all but one count Paniagua asked the magistrate to grant a mistrial. Paniagua accordingly took the express position, from which he never retreated at the trial, that the magistrate was authorized to grant a mistrial. Therefore, when the magistrate granted the mistrial he acted consistently with authority which Paniagua had asked him to exercise only hours earlier. Indeed, after the mistrial was granted Paniagua engaged in routine discussions regarding a retrial, thus implicitly acknowledging that it was not barred.

In *Williams*, of course, the issue was whether a conviction in a proceeding at which the magistrate purportedly exceeded his authority could be affirmed. Here, however, we are concerned with the distinctly different question of whether the termination of a proceeding by reason of the exercise of authority by a magistrate which Paniagua expressly requested that he use should preclude his retrial. We think not. We have consistently held that judicial estoppel precludes a party from assuming a position in a legal proceeding inconsistent with one previously asserted. *See Delgrosso v. Spang and Co.*, 903 F.2d 234, 241–42 (3d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990); *Murray v. Silberstein*, 882 F.2d 61, 66 (3d Cir.1989). That, of course, is exactly what

---

**3.** We do, however, point out that Paniagua's objection to the supplemental instructions in the district court was not based on the alleged lack of authority of the magistrate to give the in-

struction. Rather, Paniagua argued that it was not appropriate to give the instructions in the circumstances then extant.

Paniagua is doing because he asked the magistrate to grant a mistrial, thereby acknowledging his authority to do so, and yet he now asserts that the magistrate acted without authority. Certainly when Paniagua asked for the mistrial he should have anticipated that, at the government's option, he could be tried again and he therefore has no reasonable basis to avoid the new trial on double jeopardy grounds. *See Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). It follows that, at bottom, this case involves nothing more than a routine retrial after a mistrial and there is thus no basis for the double jeopardy claim.

The order of June 19, 1990, will be affirmed.