

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-1-1995

# In Re: Keith Zettlemoyer

Precedential or Non-Precedential:

Docket 95-9000

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"In Re: Keith Zettlemoyer" (1995). *1995 Decisions.* Paper 116.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/116

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 95-9000


IN RE: KEITH ZETTLEMOYER

ALDONA DeVETSCO; THOMAS SCHMIDT;
and KEITH ZETTLEMOYER,
                    Petitioners/Appellants
          v.

MARTIN HORN, Commissioner, Pennsylvania
Department of Corrections; and JOSEPH P.
MAZURKIEWICZ, Superintendent of the State
   Correctional Institution at Rockview



On Appeal from the United States District Court
   For the Middle District of Pennsylvania
          (D.C. No. 95-cv-00660)



Argued May 1, 1995

Before:  SLOVITER, Chief Judge,
GREENBERG and NYGAARD, Circuit Judges

(Opinion Filed: May 1, 1995)



Billy Nolas  (Argued)
          Attorney for Appellants

Robert P. Graci  (Argued)
Chief Deputy Attorney General
Harrisburgh, PA
          Attorney for Appellees



OPINION OF THE COURT

PER CURIAM.

Petitioners Aldonda DeVetsco and Thomas Schmidt appeal from the district court's orders dismissing their petition for a writ of habeas corpus brought on behalf of Keith Zettlemoyer and denying their request for a stay of Zettlemoyer's execution on the ground that they have no standing. For the reasons set forth below, we will affirm the dismissal order of the district court and deny the petitioners' motion for a stay of execution filed in this court.

I.

On October 13, 1980, Keith Zettlemoyer was arrested and charged with murder for the shooting death of Charles DeVetsco. On April 24, 1981, after a jury trial in the Court of Common Pleas of Dauphin County, Zettlemoyer was convicted of first degree murder. On that same date, after a brief sentencing hearing, the jury determined that the death penalty should be imposed.

After Zettlemoyer's post-verdict motions were denied, Zettlemoyer filed a direct appeal to the Supreme Court of Pennsylvania, which affirmed the conviction and sentence. See Commonwealth v. Zettlemoyer, 454 A.2d 937 (Pa. 1982), cert. denied, 461 U.S. 970 (1983). Zettlemoyer then filed a petition under Pennsylvania's Post-Conviction Hearing Act ("PCHA"), 42 Pa.

Cons. Stat. Ann. §§ 9541 et seq.[1]  The PCHA action was denied without a hearing, see Commonwealth v. Zettlemoyer, 106 Dauphin County Reports 215 (1985), and that denial was affirmed on appeal.  Commonwealth v. Zettlemoyer, 515 A.2d 620 (Pa. Super. Ct. 1986), allocatur denied, 518 A.2d 807 (Pa. 1986), cert. denied, 481 U.S. 1007 (1987).

On July 17, 1987, Zettlemoyer filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Pennsylvania. On May 31, 1988, the district court dismissed the petition.  The dismissal was affirmed by this court in a split opinion.  See Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), cert. denied, 502 U.S. 902 (1991).[2]

On February 28, 1995, the governor of Pennsylvania signed a death warrant scheduling Zettlemoyer's execution for the week of April 30, 1995.  The execution is currently set for May 2, 1995.

On April 27, 1995, petitioners Aldonda DeVetsco, the mother of the individual murdered by Zettlemoyer, and Thomas Schmidt, who was Zettlemoyer's attorney in the PCHA proceedings

---

[1].  The PCHA was subsequently repealed and replaced with the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541 et seq.

[2].  By happenstance, the same three judges are on this panel. They are not divided on the only issue before us, petitioners' standing to file these proceedings.

and in Zettlemoyer's prior federal habeas action, filed a second petition for habeas corpus on Zettlemoyer's behalf in the United States District Court for the Middle District of Pennsylvania.[3] The petition raises a variety of claims, including (1) that Zettlemoyer is mentally ill and incompetent and his execution would therefore violate the Eighth Amendment, (2) that Zettlemoyer's trial counsel was inadequate, (3) that newly discovered evidence suggests that the imposition of the death penalty in this case was unconstitutional under Simmons v. South Carolina, 114 S. Ct. 2187 (1994), and (4) that the method of execution (lethal injection) employed by the state of Pennsylvania constitutes cruel and unusual punishment under the Eighth Amendment. In conjunction with the filing of the petition, petitioners filed an application to stay the execution.

On April 29, 1995, after a two-day evidentiary hearing, the district court concluded that DeVetsco and Schmidt lacked standing to pursue the petition. It therefore dismissed the petition and denied the petitioners' application for the stay. The district court, however, granted the petitioners' application for a certificate of probable cause and this appeal followed. In connection with the appeal, petitioners have filed with this

---

[3]. The petition also names Zettlemoyer as a petitioner. Zettlemoyer, however, did not participate in the preparation of the petition and he has not sanctioned the filing of the petition.

court a "Motion for Stay of Execution and Request for a Meaningful Opportunity for Briefing and for Oral Argument."

## II.

In considering the petitioners' request for a stay, and before proceeding to the merits of the petition, we must first address the threshold question of petitioners' standing to pursue this habeas petition and request for a stay. Article III of the United States Constitution grants the federal courts jurisdiction over only "cases and controversies," and the standing doctrine "serves to identify those disputes which are appropriately resolved through the judicial process." Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (citing Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471-76 (1982)). Where standing is lacking, the federal courts lack the power to grant habeas relief. See Demosthenes v. Baal, 495 U.S. 731, 737 (1990).

In the petition, both DeVetsco and Schmidt argue that they are entitled to "next friend" standing to pursue the petition on behalf of Zettlemoyer. In Whitmore, the Supreme Court clarified that a party seeking to establish "next friend" standing must, among other things, "provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action." Whitmore, 495 U.S. at

163.[4]  The burden is on the "next friend" to establish this prerequisite.  Id. at 164.  Notably, the Whitmore Court also held that "next friend" standing is not available if "an evidentiary hearing shows that the defendant has given a knowing, intelligent and voluntary waiver of his right to proceed, and his access to court is otherwise unimpeded."  Id. at 165; see also Demosthenes v. Baal, 495 U.S. 731, 734 (1990).

In this case, after a two-day evidentiary hearing, the district court concluded that DeVetsco and Schmidt failed to sustain their burden of establishing "inaccessibility, mental incompetence, other disability" on the part of Zettlemoyer. Transcript of April 29, 1995 at p. 280.  The district court further found that Zettlemoyer "has knowingly, intelligently and voluntarily opted to proceed with his execution with full understanding of the other options of unimpaired access to the courts."  Id.

The district court's conclusion on these issues are findings of fact that may not be disturbed unless they are clearly erroneous.  See Gov't of the Virgin Islands v. Williams, 892 F.2d 305, 312 (3d Cir. 1989), cert. denied, 495 U.S. 949 (1990); Fed. R. Civ. P. 52(a); see also Mason by and through

---

[4].  The Whitmore Court also required that a party seeking "next friend" status "be truly dedicated to the best interests of the person on whose behalf he seeks to litigate" and suggested that the party "must have some significant relationship with the real party in interest."  Whitmore, 495 U.S. at 163-64.

<u>Marson v. Vasquez</u>, 5 F.3d 1220, 1224-25 (9th Cir. 1993).  A
finding may not be deemed clearly erroneous "[i]f the district
court's account of the evidence is plausible in light of the
record viewed in its entirety."  <u>Anderson v. Bessemer City</u>, 470
U.S. 564, 573-74 (1985).

After a review of the record in this case, we conclude
that the district court's conclusions are not clearly erroneous.
We note that much of the evidence on which the petitioners rely
concerns Zettlemoyer's mental state in 1984.  While there is
more recent evidence presented by petitioners, the district court
weighed that evidence with that presented by the respondents and
gave the latter more weight in its findings and in reaching its
conclusions.  Furthermore the district court had the opportunity
to hear the testimony from Zettlemoyer himself, to observe
Zettlemoyer, and to question him closely regarding his decision
not to join in this habeas action.

We have carefully reviewed the transcript of
Zettlemoyer which supports the district court's conclusion that
he is competent.  For example, he explained why he wanted the
execution to go forward.

> THE WITNESS:  No, sir, I'm afraid that my execution is
> going to be stopped.  If it's stopped, sir, my 14 and-
> a-half years of suffering will continue on in an
> unbroken chain for maybe another 14, 20, or 25 years.
> It's--the thought of all that is just deeply
> disturbing.
>
> I'm afraid, sir, that Mr. Wiseman may somehow

convince you to issue a stay of execution and stop my execution.  I have a very deep fear of that, sir, and I'm hoping that as a direct result of you sitting there, talking to me, that you are an intelligent man, and can tell that I am not mentally incompetent.

I am not crazy, I'm not loony.  I understand perfectly what's going on with the execution and everything, and it was my desire, which I expressed to my attorney, to come up here and try to untwist some of the terrible things that Mr. Wiseman has gotten up here and twisted.  He has taken things out of context.  He has twisted the truth.  He has used half-truths.

Transcript of April 29, 1995 at 149.

A.   Those are one of the reasons, sir.  My other two reasons are that my imprisonment has been very, very harsh.  You must understand, sir, that I've only been in general population for 14 months out of 15 years imprisonment.  I have done the hardest time of any convict in prison.

I see my execution as an end of suffering to my imprisonment, a blessed, merciful release from all of these health symptoms that I'm constantly suffering with.

And ten and-a-half years ago I became a Christian.  And as a Christian, I have many questions and desires that I wish to know, and only God can answer those questions.  So I'm very anxious to get to Heaven, so to speak, so that I can finally learn the answers to all of these deep religious and philosophical questions that have come across my mind for all of these years, sir.

Transcript of April 29, 1995 at 182.

There is adequate evidence to support the district court's findings and conclusions that petitioners failed to prove that Zettlemoyer was incompetent and that Zettlemoyer has knowingly, intelligently and voluntarily waived his right to

proceed.[5]  Schmidt and DeVetsco therefore are not entitled to "next friend" standing.  See Whitmore, 495 U.S. at 149.  In the absence of "next friend" standing for Schmidt or DeVetsco or the appointment of a guardian, we conclude that the district court correctly dismissed the petition, as no "adequate basis exists for the exercise of federal power" in this case.  See Demosthenes, 495 U.S. at 737.[6]

---

[5].  Petitioners argue on appeal that they did not receive a "full and fair hearing" in the district court.  They complain that the district court gave them no notice that an evidentiary hearing would be held on Friday, April 28, 1995, that the district court made numerous comments evidencing its disdain for petitioners' counsel, that they had an inadequate opportunity to examine the background of the court-appointed psychiatrist, and that the district court improperly barred petitioners' counsel from conducting a full examination of Zettlemoyer.  After a careful review of the record, we find all of these contentions meritless. The petition in this case was filed a mere five days before the execution was scheduled, and the district court made every effort to ensure that the petitioners received a full and fair opportunity to present evidence in support of their case. Indeed, in light of the emergency nature of the petition, we commend the district court for its extensive and thorough approach to the issues raised by the petition.

[6].  Because we affirm the district court's conclusion that it is powerless to address the issues raised in the petition due to petitioners' clear lack of standing, we need not address petitioners' suggestion that the district court erred by failing to await the outcome of petitioners' state court proceedings. Nor need we address petitioners' argument that the district court's grant of the certificate of probable cause to appeal requires this court to reach the merits of the petition under Barefoot v. Estelle, 463 U.S. 880 (1985).  We note, however, that Barefoot requires only that we reach the merits of the appeal, not the merits of the issues raised in the underlying habeas petition. Id. at 888-89.  By affirming the district court's order dismissing the petition, we have reached the merits of this

In reaching our result we have considered petitioners' contention at oral argument, predicated on <u>Perry v. Louisiana</u>, 498 U.S. 38 (1990), and <u>State v. Perry</u>, 610 So.2d 746 (La. 1992), that the district court's finding that Zettlemoyer was competent to waive further appeals should be reversed because Zettlemoyer was taking an anti-depressant/anti-psychotic drug when he testified before the district court and when he wrote a letter on March 28, 1995, indicating that he wanted no further appeals.

In <u>Perry v. Louisiana</u>, the Supreme Court vacated a decision of the Louisiana Supreme Court denying review of a trial court's decision "order[ing] the state to administer antypsychotic drugs to [a] prisoner" in order to make him able "to understand the link between his crime and punishment." <u>State v. Perry</u>, 610 So.2d at 747. The Supreme Court remanded the case for consideration in light of <u>Washington v. Harper</u>, 494 U.S. 210 (1990).

Those cases are inapposite. <u>Harper</u> only held that an inmate has a "significant liberty interest in avoiding the <u>unwanted</u> administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." <u>Harper</u>, 494 U.S. at 221 (emphasis added). Of course, as the Supreme Court of Louisiana held upon <u>Perry</u>'s remand, the involuntary

(..continued)
appeal, and have therefore satisfied our obligation under <u>Barefoot</u>.

administration of antypsychotic medications for no legitimate penological purpose other than making the defendant competent for execution is a clear violation of the defendant's constitutional rights. State v. Perry, 610 So.2d at 754 (trial court's order "cannot be justified under Harper because forcible administration of drugs to implement execution is not medically appropriate.")

In this case, however, the record is clear that Zettlemoyer voluntarily took the medication as part of a course of treatment for his medical problems. He testified before the district court that "I have a number of health problems, and the psychiatrist and the psychologist at the SCI Pittsburgh Institution have recommended a variety of medications for me to take. And it benefits me tremendously so I always take it." Transcript of April 29, 1995 at 140. Thus, Zettlemoyer's situation is markedly different from Harper's and Perry's, and the policies underlying those cases do not cast doubt on the district court's finding. To order the trial court to force Zettlemoyer to stop taking medications that were prescribed for him in the course of legitimate medical treatment, and that he desires to take -- simply to see what he would say if he went untreated -- would be a bizarre way to vindicate the Due Process Clause. We decline to extend Harper and Perry in that manner.

### III.

### Conclusion

For the foregoing reasons, we will affirm the order of the district court dismissing the petition for habeas corpus for lack of standing and deny petitioners' motion for a stay of execution.