James Edward CLARK,
Plaintiff–Appellant,

v.

Robert POULTON, Utah State Corrections Department, David Jorgensen, Salt Lake County Sheriff's Office, and John Does I through X, Defendants–Appellees.

No. 88–1177.

United States Court of Appeals,
Tenth Circuit.

May 11, 1992.

Jeffrey A. Chase and Edwin P. Aro of Holme Roberts & Owen, Denver, Colo., for plaintiff-appellant.

David E. Yocom, Salt Lake County Atty., and Jerry G. Campbell, Deputy County Atty., Salt Lake City, Utah, for defendants-appellees, Salt Lake County Sheriff's Office and David Jorgensen.

R. Paul Van Dam, Atty. Gen., and Brent A. Burnett, Assistant Atty. Gen., Salt Lake City, Utah, for defendants-appellees, Robert Poulton and Utah State Corrections Dept.

Before HOLLOWAY, SEYMOUR, and ANDERSON, Circuit Judges.

ON PETITION FOR REHEARING

STEPHEN H. ANDERSON, Circuit Judge.

This case is before us on rehearing to consider the application of two decisions by the United States Supreme Court, *McCarthy v. Bronson*, — U.S. —, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991), and *Peretz v. United States*, — U.S. —, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991), issued since the previous opinion by the panel in this case. *Clark v. Poulton*, 914 F.2d 1426 (10th Cir.1990). Upon review of those authorities, we grant the petition for rehearing, withdraw our previous opinion and substitute the following opinion.

James E. Clark brought this suit under 42 U.S.C. § 1983 against the Adult Parole Division of the Utah State Corrections De-partment, parole officer Robert Poulton, the Salt Lake County jail, and David Jorgensen, a transportation officer employed at the jail. Clark alleged that his constitutional rights were violated by two separate incidents of excessive force, and by the denial of medical treatment and of reasonable access to the mails during his pretrial detention in the jail.[1] The district court referred the case to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge held an evidentiary hearing and submitted a report recommending that Clark's claims be dismissed. The district court made a de novo review of the record, adopted the magistrate judge's report and entered judgment accordingly. Clark appeals, asserting that the magistrate judge had no jurisdiction because the referral was not authorized by statute, that in any event the district court failed to conduct a proper de novo review of the portion of the report to which Clark had objected, and that the magistrate judge erred in his application of the law. We hold that (1) the referral was authorized by statute; (2) in any event Clark waived his right to object to the magistrate judge's authority by failing to object below; and (3) the district court conducted a proper review of the magistrate judge's report. We therefore affirm the dismissal of Clark's claims.

### BACKGROUND

The relevant facts are undisputed. While on parole following state court convictions, Clark returned to Salt Lake City after an out-of-state visit approved by his parole officer, defendant Poulton, and learned that the police were looking for him in connection with two armed robberies. The day after Clark returned, he reported to Poulton at the Salt Lake County Parole office. Poulton then arrested him on suspicion of the armed robberies, handcuffed him, and took him down the hall to be booked. When Clark objected during the booking to being photographed without an attorney, Poulton allegedly pushed

---

1. Clark's claims regarding the denial of medical treatment while in jail and his challenge to the jail magazine policy were consolidated with his excessive force claims.

Clark against the wall and lifted his handcuffed arms over his head, aggravating a previous back injury. Following his transportation to the Salt Lake County jail, Clark purportedly did not receive requested medical treatment for his back for several weeks.

While detained in the jail, Clark and several other inmates were transported to court by defendant Jorgensen. On leaving the courtroom, Clark asked to use the restroom and Jorgensen told him he would have to wait. Because of previous surgery, waiting was apparently difficult and uncomfortable for Clark and he later doubled over in the courthouse elevator. Jorgensen allegedly grabbed Clark's neck and chest and pushed him into the elevator wall, again aggravating his back injury. Clark required physical therapy for a year after his release from jail and sought recovery of these medical expenses as part of his damages.

Clark's original complaint was filed May 12, 1986. On May 14, the district court entered an order of reference which stated:

> IT IS ORDERED that as authorized by 28 U.S.C. § 636(b)(1)(B) and the rules of this court the above entitled case is referred to the magistrate. He is directed to manage the case, to receive all motions filed, hear oral arguments hereon, to conduct evidentiary hearings when proper and make proposed findings of fact, and to submit to the undersigned judge a report and recommendation for the proper resolution of dispositive matters presented.

R.Vol. I, doc. 2. Pursuant to the order, the magistrate judge thereafter determined that Clark could proceed in forma pauperis,

appointed him counsel, held scheduling and pretrial conferences, conducted an evidentiary hearing (described in the relevant documents as a trial), and issued a report recommending that Clark's claims be dismissed. Clark objected to the report, which the district court adopted in all respects, after reviewing the record.

## DISCUSSION

### I. *Propriety of Reference to Magistrate Judge*

Clark first asserts that the magistrate judge had no jurisdiction over his case because the referral was not authorized by the relevant statute, 28 U.S.C. § 636(b)(1)(B). Our analysis of this issue necessitates a review of the jurisdiction and authority of a federal magistrate judge under section 636.

Section 636(b)(1)(A) authorizes a judge to designate a magistrate judge to hear and determine any pretrial matter except for certain dispositive motions listed therein.[2] The district court reviews a section 636(b)(1)(A) determination to determine whether the "magistrate's order is clearly erroneous or contrary to law." *Id.*

Section 636(b)(1)(B) authorizes a judge to designate a magistrate judge to conduct evidentiary hearings and submit proposed findings and recommendations in three types of proceedings: (1) those dispositive motions excepted in section 636(b)(1)(A); (2) applications for post-trial relief by criminal defendants; and (3) prisoner petitions challenging conditions of confinement.[3] If a party objects to the magistrate judge's proposed findings and recommendations, the district court must "make a de novo deter-

2. Section 636(b)(1)(A) provides in pertinent part as follows:

> [A] judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A).

3. Section 636(b)(1)(B) provides as follows:

> [A] judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for post-trial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

28 U.S.C. § 636(b)(1)(B).

mination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

Section 636(b)(2) authorizes designation of a magistrate judge to serve as a special master, either pursuant to the Federal Rules of Civil Procedure or, upon consent of the parties, without regard to Rule 53(b) of the Federal Rules of Civil Procedure.

Section 636(b)(3) provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." The parameters of this "catch-all" provision are relevant to our decision in this case.

Finally, section 636(c)(1) provides that "[u]pon the consent of the parties, a ... magistrate ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c)(1).[4] A party may appeal a judgment entered under this section to either the district court or a court of appeals, in the same way in which a district court judgment is appealed to the court of appeals. 28 U.S.C. § 636(c)(3), (4).

At issue in this case are Clark's two claims based on excessive force, one of which occurred at the Salt Lake County Parole Office after Clark's parole officer arrested him and while he was being booked, and the other which occurred during Clark's pretrial detention in jail. As indicated, the district court referred the matter to the magistrate judge under section 636(b)(1)(B), evidently treating this case as a conditions-of-confinement case.

**A. Section 636(b)(1)(B)—Conditions of Confinement:**

Section 636(b)(1)(B) authorizes referral to a magistrate judge of "prisoner petitions challenging conditions of confinement." The propriety of such a referral therefore involves two subsidiary questions: (1) whether "conditions of confinement" encompasses only ongoing prison conditions or whether it extends to isolated instances of alleged mistreatment; and (2) whether "confinement" is present—that is, whether the challenged incident occurred while the prisoner was in "confinement." We address each question in turn.

**1. *Isolated Incidents.***

■ The propriety of the referral to the magistrate judge of Clark's two individual and isolated claims of excessive force is controlled by *McCarthy v. Bronson*, —— U.S. ——, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991). The Supreme Court in *McCarthy* granted certiorari "to decide whether ... authorization [under 28 U.S.C. § 636(b)(1)(B)] includes cases alleging a specific episode of unconstitutional conduct by prison administrators or encompasses only challenges to ongoing prison conditions." 111 S.Ct. at 1739. The Court concluded that "conditions of confinement" cases under section 636(b)(1)(B) include suits alleging that prison administrators acted unconstitutionally in an isolated incident or incidents. Clark's claims therefore challenged "conditions" of confinement under *McCarthy.* We turn now to the question of whether Clark was in "confinement" when each incident occurred.

**2. *Confinement.***

■ One of the incidents in this case occurred while Clark was detained, in handcuffs, at the Salt Lake County Parole Of-

---

4.  Section 636(c)(2) explains the consent requirement more fully:

    If a magistrate is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of the court shall, at the time the action is filed, notify the parties of the availability of a magistrate to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of the court. Thereafter, either the district court judge or the magistrate may again advise the parties of the availability of the magistrate, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate shall include procedures to protect the voluntariness of the parties' consent. 28 U.S.C. § 636(c)(2).

fice, shortly after he was arrested. The other took place while he was in pretrial detention. There is no doubt that Clark was in "confinement" for purposes of section 636(b)(1)(B) when he was in pretrial detention. "[T]he Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards for pretrial detainees...." *Collins v. City of Harker Heights*, —— U.S. ——, ——, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992) (emphasis added). *See also Wimmer v. Cook*, 774 F.2d 68, 69, 74 (4th Cir. 1985) (pretrial detention); *Worley v. Sharp*, 724 F.2d 862, 863 (10th Cir.1983) (per curiam) (same). Thus, referral of the excessive force claim occurring while he was in pretrial detention was authorized by section 636(b)(1)(B). We need not reach the question of whether Clark was in "confinement" while he was being booked because, as we explain *infra*, referral of both claims was proper under section 636(b)(3).

B. Section 636(b)(3)—Additional Duties:

■ Section 636(b)(3) permits magistrate judges to be assigned "such additional duties as are not inconsistent with the Constitution and laws of the United States." It is a " 'catchall' provision." *Garcia v. Boldin*, 691 F.2d 1172, 1178 (5th Cir.1982); *accord, e.g., King v. Ionization Int'l, Inc.*, 825 F.2d 1180, 1185 (7th Cir.1987). "Where the district court is not specifically empowered to refer a case, it may do so under the general provision of 28 U.S.C. § 636(b)(3)...." *Hall v. Vance*, 887 F.2d 1041, 1046 (10th Cir.1989).

The legislative history of the original Federal Magistrate's Act, as well as the 1976 amendments to the Act, confirm the expansiveness of subsection (b)(3). In *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), the Supreme Court reviewed the legislative history of the original Act:

The three examples § 636(b) sets out are, as the statute itself states, not exclusive. The Senate sponsor of the legislation, Senator Tydings, testified in the House hearings:

"The Magistrate[s] Act specifies these three areas because they came up in our hearings and we thought they were areas in which the district courts might be able to benefit from the magistrate's services. We did not limit the courts to the areas mentioned....

We hope and think that innovative, imaginative judge who want to clean up their caseload backlog will utilize the U.S. magistrates in these areas and perhaps even come up with new areas to increase the efficiency of their courts."

*Id.* at 267, 96 S.Ct. at 553 (quoting *Hearings on the Federal Magistrates Act Before Subcomm. No. 4 of the House Comm. on the Judiciary*, 90th Cong., 2d Sess. 81 (1968)). Similarly, the legislative history of the 1976 amendments states:

This subsection [(b)(3)] enables the district courts to continue innovative experimentations in the use of this judicial officer. At the same time, *placing this authorization in an entirely separate subsection emphasizes that it is not restricted in any way by any other specific grant of authority to magistrates.*

H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6172 (emphasis added). Most recently, the Supreme Court in *Peretz* noted the breadth of the "additional duties" section:

The generality of the category of "additional duties" indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial process that had not already been tried or even foreseen. If Congress had intended strictly to limit these additional duties to functions considered in the committee hearings or debates, presumably it would have included in the statute a bill of particulars rather than a broad residuary clause.

*Peretz*, 111 S.Ct. at 2667; *see also Government of the Virgin Islands v. Williams*, 892 F.2d 305, 310 (3d Cir.1989) ("The plain language of this statute clearly confers upon federal magistrates the jurisdiction to assume virtually any judicial duty assigned

to them by the district courts, so long as that assignment is neither unconstitutional nor a violation of some other federal law."), *cert. denied,* 495 U.S. 949, 110 S.Ct. 2211, 109 L.Ed.2d 537 (1990). The statutory authorization for referring to magistrate judges prisoner petitions challenging conditions of confinement was not meant as a bar to the referral of prisoner petitions unrelated to conditions of confinement. *See, e.g., John v. Louisiana,* 899 F.2d 1441, 1446 (5th Cir.1990) (subsection (b)(3) authorizes post-trial referral of sanctions question even though subsection (b)(1)(A) only refers to pretrial matters).

*Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), does not compel a contrary conclusion. There, the Court concluded that "the carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial," *id.* at 872, 109 S.Ct. at 2245, because

> [w]hen a statute creates an office to which it assigns specific duties, those duties outline the attributes of the office. Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties.

*Id.* at 864, 109 S.Ct. at 2241. Presiding over a felony trial bears no relation to the duties specified in the statute, but presiding over a prisoner's section 1983 action does.

■ *Peretz* supports this interpretation of *Gomez:*

Because the specified duties that Congress authorized magistrates to perform without the consent of the parties were not comparable in importance to supervision of felony trial *voir dire* but were instead 'subsidiary matters,' we did not waver from our conclusion that a magistrate cannot conduct *voir dire* over the defendant's objection.

*Peretz,* 111 S.Ct. at 2667 (citation omitted). Because Clark's section 1983 action challenging his treatment while being booked and while in pretrial detention is "comparable in importance" to a prisoner petition challenging conditions of confinement, construed in *McCarthy* to include individual instances of alleged mistreatment, we believe the referral to the magistrate judge under section 636(b)(3) was proper.[5] Furthermore, as the statute, the cases, and legislative history make clear, there is a need for district courts to have maximum flexibility in referring matters to magistrate judges to aid the district courts in dealing with the demands of heavy case loads, and for other compelling purposes of the administration of justice. The referral here advanced that settled purpose.

## II. *Waiver*

■ Moreover, Clark made no objection to the referral to the magistrate judge. Therefore, assuming *arguendo* that there was no statutory authorization for the referral, the issue was waived by Clark's failure to object below.

While it is true that the Supreme Court in *Gomez* used the term "jurisdiction" to describe the magistrate judge's authority,[6]

---

**5.** The dissent argues that section 636(b)(3) does not confer authority to refer to a magistrate a section 1983 action that does not challenge a condition of confinement, absent the plaintiff's express consent. We disagree. *Peretz* permits referral to the magistrate of felony trial jury voir dire where the parties consent *or* where the defendant raises no objection. *See Peretz,* 111 S.Ct. at 2667–68 (Court approves the reasoning of circuit court cases holding that "the rationale of [*Gomez*] does not apply when the defendant has not objected to the magistrate's conduct of the *voir dire*."); *see also id.* at 2669 ("a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence."). Both the presence of consent, and

the lack of an objection, provide independent bases for the Court's conclusion that voir dire by a magistrate violated neither the Federal Magistrate's Act nor Article III. *See United States v. Martinez–Torres,* 944 F.2d 51 (1st Cir. 1991) (en banc); *United States v. Arnoldt,* 947 F.2d 1120, 1123 (4th Cir.1991), *cert. den.,* —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992).

**6.** The Court stated:

> Equally basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside. Thus harmless-error analysis does not apply in a felony case in which, despite the defendant's

it is also clear that the Court was *not* using the term "jurisdiction" in the sense of non-waivable subject matter jurisdiction. *See Peretz*, 111 S.Ct. at 2678 (Scalia, J., dissenting) ("We used [the term 'jurisdiction'] in *Gomez* as a synonym for 'authority,' not in the technical sense involving subject-matter jurisdiction."); *United States v. Wey*, 895 F.2d 429, 431 (7th Cir.) ("*Gomez* used the word 'jurisdiction' in a context revealing that the court meant 'authority.' "), *cert. denied*, —— U.S. ——, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990). Indeed, although the Court in *Peretz* specifically declined to address the question of whether an unauthorized referral is a matter of jurisdiction and therefore not subject to waiver,[7] the Court's analysis suggests that it views *Gomez* as not implicating subject matter jurisdiction. "In holding that a magistrate can conduct voir dire where the parties consent, the Court [in *Peretz*] cannot have interpreted *Gomez* as implicating subject matter jurisdiction of the courts; it is well-established that litigants cannot confer jurisdiction by consent where none exists." *United States v. Judge*, 944 F.2d 523, 525 (9th Cir.1991) (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 701–02, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982)).

We thus agree with those circuit court cases which have considered the issue and held that a magistrate judge's lack of statutory authority is not a jurisdictional defect, so any objection is waived if not raised. *See, e.g., United States v. Judge*, 944 F.2d 523 (9th Cir.1991); *United States v. Musacchia*, 900 F.2d 493, 503 (2nd Cir. 1990) ("the improper reference to a magistrate is a waivable defect that must be

raised within the time permitted by Fed. R.Crim.P. 12(c) or it is waived under Rule 12(b)."), *cert. denied*, —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991); *United States v. Wey*, 895 F.2d 429, 431 (7th Cir.) ("We do not have a 'jurisdictional' problem.... We have at most a mistaken interpretation of a law designating which judicial officer shall preside over which proceedings."), *cert. denied*, —— U.S. ——, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990); *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir.1989) (per curiam); *United States v. Vanwort*, 887 F.2d 375, 382–83 (2d Cir.1989) (applying *Gomez* and holding that magistrate judge's jury selection does not necessitate reversal of verdict when defendant failed to object), *cert. denied*, 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 290 (1990); *United States v. Mang Sun Wong*, 884 F.2d 1537, 1544–46 (2d Cir.1989) (order on petition for rehearing) (same), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990); *see also Government of the Virgin Islands v. Williams*, 892 F.2d 305, 309–12 (3d Cir. 1989) (failure to object constitutes consent to reference), *cert. denied*, 495 U.S. 949, 110 S.Ct. 2211, 109 L.Ed.2d 537 (1990); *United States v. Ford*, 824 F.2d 1430, 1438–39 (5th Cir.1987) (failure to object to magistrate's jury selection constitutes waiver of error); *cf. United States v. Rivera–Sola*, 713 F.2d 866, 874 (1st Cir.1983) (because defendant failed to object to magistrate's jury selection "we review only for plain error"). Any error below was a procedural lapse, not a jurisdictional failing. *Archie v. Christian*, 808 F.2d 1132, 1134–35 (5th Cir.1987) (en banc).[8]

---

objection and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury.

*Gomez,* 490 U.S. at 876, 109 S.Ct. at 2248.

**7.** The Supreme Court did, however, state in dicta:

We agree with the view of the majority of Circuit Judges who have considered this issue, both before and after our decision in *Gomez,* that permitting a magistrate to conduct the *voir dire* in a felony trial when the defendant raises no objection is entirely faithful to the congressional purpose in enacting and amending the Federal Magistrates Act.

111 S.Ct. at 2671.

**8.** We note that a panel of our court, relying, as it must, on the previous panel opinion in *Clark,* stated in dictum that "[t]he failure to object does not waive issues concerning the magistrate's jurisdiction." *Moore v. United States,* 950 F.2d 656, 659 n. 7 (10th Cir.1991). That dictum does not bind us, however, in view of our withdrawal of the previous panel opinion in *Clark,* which *Moore* cited, and the substitution of this opinion.

**1368**

### III. *De Novo Review*

■ On August 18, 1987, the magistrate judge held an evidentiary hearing, which was recorded. On September 16, he recommended that Clark's suit be dismissed. Clark objected to this recommendation, but on December 31 the district court dismissed the action. The dismissal order states that the court "made a de novo review" of the case, R. Vol. I, Tab 49, at 2, but the recording of the evidentiary hearing had not yet been transcribed.

"When objections are made to the magistrate's factual findings based on conflicting testimony or evidence, both § 636(b)(1) and Article III of the United States Constitution require de novo review." *Gee v. Estes*, 829 F.2d 1005, 1008 (10th Cir.1987) (citation omitted). "In conducting this review, the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." *Id.* at 1009.

*Gee* was decided three months before the district court dismissed Clark's action. We presume that the district court knew the relevant law, *United States v. Lowden*, 905 F.2d 1448, 1449 n. 1 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 206, 112 L.Ed.2d 166 (1990), so the court's statement that it conducted a de novo review must be taken to mean that it listened to the tape recording of the hearing before it dismissed Clark's suit. *See Andrews v. Deland*, 943 F.2d 1162, 1171 (10th Cir.1991) ("We will not look behind a district court's express statement that it engaged in a *de novo* review of the record."), *cert. denied*, —— U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992). Indeed, because of the expense and delay [9] of transcription, district courts commonly listen to a tape rather than await a transcript.

*Branch v. Martin*, 886 F.2d 1043 (8th Cir.1989), which remanded in similar circumstances, is distinguishable. As here, the district court adopted the magistrate judge's recommendations before the transcript of a recorded hearing was prepared. As here, the district court stated that it had conducted a de novo review, but did not say anything about listening to the tape. *Id.* at 1046; *see also Moran v. Morris*, 665 F.2d 900, 901–02 (9th Cir.1981) (court of appeals remanded for further review of tape-recorded proceedings before magistrate judge after district court adopted magistrate judge's recommendations the day they were issued). The important distinction is that *Branch* announced for the Eight Circuit the rule we adopted in *Gee*. The district court in *Branch* did not have the benefit of that decision, but the court below was aware of *Gee*. The doubts the Eight Circuit held about the breadth of that district court's review would be unfounded here.

### IV. *Merits*

On the merits of Clark's claims, we agree with the decision of the district court. Accordingly, the judgment is AFFIRMED.

SEYMOUR, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent. The issue before us is not a difficult one, despite the lengthy and technical opinion which follows. This case involves the application of straightforward principles of statutory construction to an ordinary statutory-construction problem. Under these principles, when specific and general provisions in a statute are irreconcilable, the specific language prevails over the general. In addition, a statute must not be construed to render one provision a nullity. The majority has attempted to apply Supreme Court cases in which these principles are not applicable, to this case in which they are. The result is a masterpiece of illogic, which unfortunately requires a detailed and complex response.

I agree with the majority that Clark's claim based on the incident occurring while he was in pretrial detention is a challenge to a condition of confinement in light of *McCarthy v. Bronson*, —— U.S. ——, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991). In my judgment, however, the claim based on the

---

**9.** The transcript in this case was not prepared until almost 14 months after the hearing was held. *See* R.Supp. Vol. II.

booking incident does not fall within the statutory language of section 636(b)(1)(B) as construed in *McCarthy*, and referral of that claim is therefore not authorized by that section. Finally, I cannot agree that referral of this prisoner's civil rights claim is authorized by section 636(b)(3), or that an unauthorized referral is a nonjurisdictional defect subject to waiver. Because a prisoner's suit for pre-confinement violations of his civil rights is the same as any other plaintiff's civil action, the logical extension of the majority's reading of section 636(b)(3) would permit a district court to refer to a magistrate the entire civil trial of any plaintiff, without consent, so long as the district court retained de novo review as specified by section 636(b)(1)(C). Congress did not intend such a result. I therefore respectfully dissent.

### I.

The booking incident occurred during Clark's arrest by his parole officer at the county parole office, before he was confined at the county jail. Clark contends that when he objected to being photographed without an attorney, the parole officer pushed him against the wall and lifted his handcuffed arms over his head, aggravating a prior back injury. I find no support in *McCarthy* for concluding that this claim challenges a condition of confinement.

The Court in *McCarthy* rested its decision on two policy grounds: the benefits of referring a broad range of cases, and the difficulty of distinguishing between isolated incidents and ongoing practices with respect to whether a claim involves a condition of confinement. 111 S.Ct. at 1742. The focus for assessing those policy considerations was whether an isolated episode of unconstitutional conduct by prison administrators during incarceration constituted a condition of confinement. In this case, we consider a claim of excessive force *incident to arrest* and prior to incarceration; the plaintiff simply happened to be in prison at the time he filed suit. Although under *McCarthy* isolated incidents are now considered conditions of confinement, the

*absence of confinement* is the dispositive factor here. The policy concern arising from the difficulty in distinguishing between isolated incidents and ongoing practices in prison is thus not at issue.

Moreover, to construe "confinement" so broadly as to include the facts at issue here would render that term virtually meaningless. *See Natural Resources Defense Council, Inc. v. United States Envtl. Protection Agency*, 822 F.2d 104, 113 (D.C.Cir. 1987) ("It would be illegitimate for the judiciary, in pursuit of some overriding Congressional goal ..., to tear asunder a specific provision which Congress saw fit to enact."). The district court's referral of this claim to the magistrate was not authorized under section 636(b)(1)(B).

### II.

I cannot agree with the majority that referral of this claim was nonetheless proper under section 636(b)(3). In my view, this conclusion is not compelled by *Peretz v. United States*, —— U.S. ——, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). To the contrary, I believe *Peretz* is distinguishable in critical respects. Allowing section 636(b)(3) to override the specific limitations set out in sections 636(b)(1)(B) and 636(c)(1) under the circumstances here renders those provisions a nullity. In so doing, the majority violates controlling rules of statutory construction recognized and applied by the Supreme Court in ascertaining whether a referral is authorized by section 636(b)(3).

The Court in *Peretz* resolved an issue left open in *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). In *Gomez*, the Court addressed the propriety of designating a magistrate to select a jury in a criminal case over the defendant's objection. The issue there was whether this referral was authorized under Section 636(b)(3), which provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." The Court concluded that presiding over jury selection in a felony case without the defendant's consent is not

among those additional duties. 490 U.S. at 871–76, 109 S.Ct. at 2245–48.

In *Peretz*, the Court considered whether the defendant's express consent warrants a different result, and broke the inquiry down into three questions:

> "1. Does 28 U.S.C. § 636 permit a magistrate to conduct the voir dire in a felony trial if the defendant consents?
>
> "2. If 28 U.S.C. § 636 permits a magistrate to conduct a felony trial voir dire provided that the defendant consents, is the statute consistent with Article III?
>
> "3. If the magistrate's supervision of the voir dire in petitioner's trial was error, did the conduct of petitioner and his attorney constitute a waiver of the right to raise this error on appeal?"

111 S.Ct. at 2664 (quoting the grant of petition for certiorari, —— U.S. ——, 111 S.Ct. 781, 112 L.Ed.2d 844 (1991)). The Court held that "the Act's 'additional duties' clause permits a magistrate to supervise jury selection in a felony trial provided the parties consent." *Id.*, 111 S.Ct. at 2667. The Court then moved to the second question set out above and concluded that such a delegation was not constitutionally infirm. *Id.* at 2669. Finally, the Court observed that its resolution of the statutory and constitutional questions made discussion of the waiver question unnecessary.

In view of the critical distinction between the referral at issue in *Peretz* and the one in this case, I am persuaded that the analysis of the section 636(b)(3) authorization in *Peretz* does not affect the analysis of this issue here. As I discuss below, the Act carefully delineates precisely what types of civil matters may be conducted by a magistrate, and under what conditions. Clark's civil action is governed by these sections of the Act. In contrast, neither the text of the statute nor its legislative history mentions a magistrate's conduct of jury voir dire in a felony case. *Peretz*, 111 S.Ct. at 2666–67. Consequently, the Court in *Gomez* and *Peretz* was required to determine whether referral with and without consent was authorized by section 636(b)(3) under the principle that "[w]hen a statute creates an office to which it assigns specific duties,

those duties outline the attributes of the office. Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties." *Id.* at 2666 & n. 7 (quoting *Gomez*, 490 U.S. at 864, 109 S.Ct. at 2241). The Court had to determine the conditions for referral of felony voir dire by analogizing that function to other functions specified by the Act.

Under this principle, the Court in *Gomez* concluded that magistrate voir dire *without consent* was *not* an additional duty authorized by section 636(b)(3). The Court pointed out that the Act expressly grants magistrates the authority to conduct jury trials of civil and criminal misdemeanor cases only with consent. 490 U.S. at 870–71, 109 S.Ct. at 2244–45. Seating a jury without consent was held impermissible because it did not bear a sufficient relation to the specified duties of conducting civil and misdemeanor trials upon consent. In *Peretz*, the Court reached a contrary conclusion with respect to magistrate jury selection *with consent*, holding that this function was analogous to specified trial functions performed with consent. In both cases, because jury voir dire was not mentioned in the Act or the legislative history, the Court had to look to comparable specified duties; consent was the critical element in those duties. "[T]hose specified duties that were comparable to jury selection in a felony trial could be performed only with the consent of the litigants." *Peretz*, 111 S.Ct. at 2666.

The Court has indicated that a different analysis is applicable when, as here, a referral under the "additional duties" clause would defeat a specific limitation otherwise imposed by the Act.

> "The district court retains the power to assign to magistrates unspecified 'additional duties,' subject only to conditions or review that the court may choose to impose. By a literal reading this additional duties clause would permit magistrates to conduct felony trials. *But the carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be con-*

*strued as an implicit withholding of the authority to preside at a felony trial."*

*Gomez,* 490 U.S. at 871–72, 109 S.Ct. at 2245 (emphasis added). Under this principle, a "carefully defined grant of authority" in the Act cannot be overridden by invoking section 636(b)(3) to validate the referral of an otherwise unauthorized matter.

The statutory scheme for referring civil trials, or portions thereof, to a magistrate is carefully defined in the Act. Under section 636(b)(1)(A), a judge may designate a magistrate to hear and determine all pretrial matters except those dispositive motions specifically listed in that section. Pretrial dispositions under this section are appealable to the district judge, who reviews the magistrate's order to determine whether it is clearly erroneous or contrary to law.[1] In other words, as to section 636(b)(1)(A) determinations by the magistrate, the district court conducts a limited review similar to an appellate court.

Under section 636(b)(1)(B), a magistrate may be designated to conduct evidentiary hearings and submit reports and recommendations on listed dispositive motions, prisoner habeas petitions, and prisoner petitions challenging conditions of confinement.[2] Section 636(b)(1)(C) provides that the district court must "make a *de novo determination* of those portions of the report or specified findings or recommendations to which objection is made." (Emphasis added). Referrals under either section 636(b)(1)(A) or (b)(1)(B) may be made without consent. Clearly, dispositive pretrial

motions and the prisoner petitions described in section 636(b)(1)(B) could not be referred to a magistrate under the "additional duties" provision of section 636(b)(3) with the purpose of subjecting them to the more limited district court review specified for pretrial motions in section 636(b)(1)(A).

An analogous point was examined in *Taberer v. Armstrong World Indus., Inc.,* 954 F.2d 888 (3d Cir.1992), where the court described the significant difference between an initial finding of contempt by the district court as opposed to review de novo under section 636(b)(1)(C) of a magistrate's finding of contempt.

"Whereas section 636(b)(1)(C) requires the district judge to make a de novo *determination,* section 636(e) requires the district judge to conduct a de novo *hearing.* In *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the Supreme Court distinguished a de novo determination from a de novo hearing. A de novo determination requires the district judge to 'consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate.' H.R.Rep. No. 94–1609, 94th Cong.2d Sess. 3 in 1976 U.S. Code Cong. & Admin.News 6163 (quoted in *Raddatz,* 447 U.S. at 675, 100 S.Ct. at 2412). In contrast, a de novo hearing entails a new proceeding at which the decision is based solely on the evidence freshly presented at the new proceeding. *See Raddatz,* 447 U.S. at 673–76, 100 S.Ct. at 2411–

---

1. This subsection provides in full:
   "A judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A Judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law."

28 U.S.C. § 636(b)(1)(A).

2. This subsection provides in full:
   "A judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."

28 U.S.C. § 636(b)(1)(B).

12. . . . In other words, when making a de novo determination, the district court reviews the record before the magistrate judge, but owes no deference to the magistrate judge's findings and conclusions. When holding a de novo hearing, however, the district court acts as a trial court."

*Id.* at 904. Similarly, when a matter is referred to a magistrate under section 636(b)(3), the initial trial is held before the magistrate, who assesses the credibility of the witnesses and makes findings of facts. Although the district court in the instant case made "a de novo determination," as the court in *Taberer* recognizes, such a determination falls short of an actual hearing before the district court where that court would have made its own credibility assessment.

Finally, section 636(c)(1) provides that a magistrate *"[u]pon consent of the parties* . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c)(1) (emphasis added). Section 636(c)(2) sets out specific requirements for obtaining consent:

"If a magistrate is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, *notify the parties of their right to consent* to the exercise of such jurisdiction. The decision of the parties shall be communicated to the clerk of the court. Thereafter, *neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent* to reference of any civil matter to a magistrate. *Rules of court for the reference of civil matters to magistrates shall include*

*procedures to protect the voluntariness of the parties' consent."*

28 U.S.C. § 636(c)(2) (emphasis added). Referral without such express consent is unauthorized. In light of section 636(c)(1), it is readily apparent that the "additional duties" provision of section 636(b)(3) does not authorizes a district court to refer an entire civil trial to a magistrate, without the parties' consent, for final disposition.

As I have outlined above, the power to refer a section 1983 action to a magistrate is specifically circumscribed by two provisions of the Act. Only those actions which constitute prisoner petitions challenging conditions of confinement are referable without consent under section 636(b)(1)(B). Prisoner section 1983 actions that do not challenge conditions of confinement are equivalent to all other civil petitions under the Act, and are only referable under section 636(c) with the express consent of the parties. Under the canon of construction the Court has indicated is applicable here, *see Gomez,* 490 U.S. at 871–72, 109 S.Ct. at 2245–46, " 'legislative affirmative description' implies denial of the non-described powers." [3] *Continental Casualty Co. v. United States,* 314 U.S. 527, 533, 62 S.Ct. 393, 396, 86 L.Ed. 426 (1942); *see also United States Marshals Serv. v. Means,* 741 F.2d 1053, 1056 (8th Cir.1984) (en banc); *Marshall v. Gibson's Prods., Inc.,* 584 F.2d 668, 675 (5th Cir.1978); 2A N. Singer, *Sutherland Statutory Construction* § 47.23 (Sands 4th ed. 1984 rev.).

The articulation of specific duties must be construed as implicitly withholding other duties not so specified, particularly when, as here, the contrary construction would in effect render the specific limitations a nullity. As the court in *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.,* 908 F.2d 1363, 1368 (7th Cir.1990), pointed out, there would not "be much point to the

---

**3.** I note the view of Justice Scalia that "*Gomez* was driven not primarily by the constitutional problems associated with forcing a litigant to adjudicate his federal claim before a magistrate, but by ordinary principles of statutory interpretation. By specifically authorizing magistrates to perform duties in civil and misdemeanor trials, and specifying the manner in which parties were to express their

consent in those situations, the statute suggested *absence* of authority to preside over felony trials through some (unspecified) mode of consent. The canon of *ejusdem generis* keeps the 'additional duties' clause from swallowing up the rest of the statute." *Peretz v. United States,* 111 S.Ct. 2661, 2679 (Scalia, J., dissenting).

elaborate provisions in section 636(c) for the conduct of civil trials ... by a magistrate *with the consent of both parties* if a district judge could compel the parties, against their wishes, to submit to a magistrate's conducting vital stages in the trial." *See also Roberts v. Manson*, 876 F.2d 670, 672 (8th Cir.1989) (section 636(b)(3) "limited by the accompanying provisions and the overall structure of section 636(b)"); *cf. Natural Resources Defense Council*, 822 F.2d at 113 ("To read out of a statutory provision a clause setting forth a specific condition or trigger to the provision's applicability is, we should have thought, an entirely unacceptable method of construing statutes."). Consequently, section 636(b)(3) cannot be construed as authority for referring to a magistrate a section 1983 action that does not challenge a condition of confinement, absent the plaintiff's express consent.

I find significant support for this conclusion in *Taberer*, 954 F.2d at 901–08. In that case, which was decided after *Peretz*, the court declined to rely on section 636(b)(3) to uphold a referral otherwise contrary to the Act. In so doing, the court implicitly recognized the critical distinction between a referral under section 636(b)(3) that would defeat express limitations otherwise imposed by the Act, and a referral that would not. *See id.* at 908 n. 29. This distinction is one that the majority has wholly failed to address. *See op.* at 1366 n. 6.

Congress has made the specific judgment that a magistrate is not authorized to conduct civil trials without the plaintiff's express consent. Congress has also limited the magistrate's conduct of evidentiary hearings without consent to prisoner condition-of-confinement and habeas cases. A prisoner's civil rights suit for pre-confinement conduct is the same as any other citizens civil rights action. I see no principled distinction between permitting section 636(b)(3) to override the specific limitations on the reference of a prisoner's civil rights action, and permitting that section to override the limitations imposed on the reference in any other civil action for final judgment on dispositive motions, for the con-

duct of an entire civil trial without consent, or for the reference of felony trials. I simply do not believe Congress intended such a result. *See Taberer*, 954 F.2d at 908; *Fowler v. Jones*, 899 F.2d 1088, 1092 (11th Cir.1990) (express consent required for magistrate jury trial of prisoner's free exercise challenge under section 1983); *accord Olympia Hotels Corp.*, 908 F.2d at 1368–69; *Roberts*, 876 F.2d at 673. Accordingly, I would hold that the referral of Clark's booking incident claim was not authorized under any section of the Act.

### III.

The Court in *Peretz* concluded that the referral at issue there was authorized under the Act and created no Article III constitutional problems. Therefore, the Court found it "unnecessary to discuss the third question that we asked the parties to brief and argue;" 111 S.Ct. at 2671, namely whether "the conduct of petitioner and his attorney [in expressly consenting to the reference] constitute a waiver of the right to raise this [issue] on appeal," *id.* at 2664. After stating that it need not discuss the waiver issue, the Court made the following somewhat opaque observations:

> "We note, however, that the Solicitor General conceded that it was error to make the reference to the Magistrate in this case and relied entirely on the argument that the error was waived. Although that concession deprived us of the benefit of an adversary presentation, it of course does not prevent us from adopting the legal analysis of those Courts of Appeals that share our interpretation of the statute as construed in *Gomez*."

*Id.* at 2671. In other words, while the Solicitor General's concession that the reference was error deprived the Court of an adversarial presentation on the issues it *had* decided, *i.e.*, the construction of the Act and the constitutionality of that construction, the Court could nonetheless reject that concession and decide these issues by adopting the legal analysis of courts whose views were contrary to the Solicitor

General's. The Court then specifically stated its agreement

> "with the view of the majority of Circuit Judges who have considered this issue, both before and after our decision in *Gomez,* that permitting a magistrate to conduct the voir dire in a felony trial when the defendant raises no objection is entirely faithful to the congressional purpose in enacting and amending the Federal Magistrates Act."

*Id.* The quote simply cannot logically be read, as the majority reads it, as dicta on the issue the Court specifically stated it was not deciding: *i.e.,* whether an *unauthorized* referral is a matter subject to waiver. *See* op. at 1367 & n. 8. When read in conjunction with the Court's immediately prior comments on the lack of an adversary presentation of the issues it did reach and its reference to legislative purposes, the Court's statement that *legislative intent* is not undermined by permitting magistrate voir dire when the defendant "raises no objection" does no more than bolster its resolution of the issues of statutory construction and constitutionality it had actually decided. Indeed, the Court's statement plainly implies that legislative intent *would* be undermined by relying on lack of objection when the legislature has expressed its intent to require explicit consent.

Moreover, in light of the significant difference between the reference at issue here and that in *Gomez* and *Peretz,* which I have set out in Part II of my dissent, I do not find the cases upon which the majority relies persuasive on the issue of waiver. *See* op. at 1367–1368. With the exception of the Fifth Circuit cases of *Mylett v. Jeane,* 879 F.2d 1272 (5th Cir.1989) (per curiam), and *Archie v. Christian,* 808 F.2d 1132 (5th Cir.1987) (en banc), these cases all address referring jury voir dire in a *criminal* case. Such a reference is not addressed in either the Magistrates Act or its legislative history. In those cases, the issue of consent and/or failure to object is relevant to the propriety of referring criminal jury voir dire because it is critical to whether such referral is authorized under section 636(b)(3) and to whether it is consti-

tutional, not because it is an express requirement of such a reference.

Here, to the contrary, the Act specifically addresses the referral of prisoner petitions, authorizing under section 636(b)(1)(B) the reference without consent of only those petitions challenging conditions of confinement. All other references of this nature require express consent under section 636(c)(1). The claim referred here is not based on a condition of confinement authorized by section 636(b)(1)(B), cannot be viewed as an additional duty authorized by section 636(b)(3), and lacks the express consent required by section 636(c)(1). The issue is thus whether the statutorily required express consent necessary to bring this reference within the ambit of the Act, as I construe it, is a nonwaivable jurisdictional prerequisite.

The majority of circuits which considered the issue prior the *Gomez* and *Peretz* decisions concluded that an improper reference is a matter of jurisdiction and therefore not subject to waiver or harmless-error analysis. In *Houghton v. Osborne,* 834 F.2d 745 (9th Cir.1987), for example, the Ninth Circuit considered facts closely analogous to those before us. There, the district court had referred a prisoner's civil rights action to a magistrate who held an evidentiary hearing on the merits of the claim and filed proposed findings and recommendations that were adopted by the district court. On appeal, the court held sua sponte that the prisoner's claim did not challenge a condition of confinement, and that the district court therefore " 'lacked the jurisdiction to refer this matter to the magistrate to conduct an evidentiary hearing on the merits of Houghton's 1983 action.' " *Id.* at 750. Similarly, in *Hall v. Sharpe,* 812 F.2d 644 (11th Cir.1987), the district court purported to refer a prisoner's civil rights suit to a magistrate under sections 636(b)(1) and (b)(3) for a trial before an advisory jury. The magistrate issued a report recommending acceptance of the jury verdict, which the district court adopted in entering final judgment against the plaintiff. On appeal, the Eleventh Circuit concluded that "the district court's referral of this case was not authorized by any provision of the Magis-

trate's Act, 28 U.S.C. § 636, and thus the magistrate was without jurisdiction to conduct the trial." *Id.* at 646; *see also Fowler v. Jones,* 899 F.2d at 1092 (following *Hall*); *Jaliwala v. United States,* 945 F.2d 221, 223–24 (7th Cir.1991) (explicit consent required for magistrate to have jurisdiction to enter final judgment under section 636(c)); *In re San Vicente Medical Partners Ltd.,* 865 F.2d 1128 (9th Cir.1989) (same); *Lovelace v. Dall,* 820 F.2d 223 (7th Cir.1987) (per curiam) (same); *Frank v. Arnold (In re Morrissey),* 717 F.2d 100 (3d Cir.1983) (magistrate had no jurisdiction to hear appeal from bankruptcy court order notwithstanding parties' express consent); *Taylor v. Oxford,* 575 F.2d 152 (7th Cir. 1978) (magistrate had no jurisdiction over motion to dismiss for failure to state claim referred under section 636(b)(3) for final disposition pursuant to parties' stipulation and local rule); *but see Archie,* 808 F.2d at 1134–35 (improper reference under sections 636(b)(1)(B) and (b)(3) matter of procedure rather than jurisdiction).

In holding that an unauthorized referral is not a jurisdictional defect, the majority relies on several cases decided after *Gomez* that concern the failure to object to *criminal* jury voir dire before a magistrate. The majority thus persists in failing to recognize the dispositive distinction between invoking section 636(b)(3) to authorize a referral not otherwise addressed in the Act, and relying on that section to legitimate a referral that defeats otherwise expressly applicable limitations. Because the opinions which the majority cites do not address the issue before us, *i.e.,* whether violations of express statutory restrictions create nonwaivable jurisdictional defects, those cases do not support the majority's position. To the contrary, the only cases I have discovered decided after *Gomez* and *Peretz* that deal with the issue of the waiver of express conditions have refused to find such limitations waivable. *See Taberer,* 954 F.2d at 907–08 & n. 29; *Jaliwala,* 945 F.2d at 223–24.

*Taberer* makes the very distinction that has eluded the majority here by expressly distinguishing that court's opinion in *Government of the Virgin Islands v.*

*Williams,* 892 F.2d 305 (3d Cir.1989), *cert. denied,* 495 U.S. 949, 110 S.Ct. 2211, 109 L.Ed.2d 537 (1990), a case upon which the majority mistakenly relies. The facts in *Taberer* are analogous to those here. The provision of the Magistrate's Act at issue was section 636(e), which addresses the procedures dealing with possibly contemptuous acts in a proceeding before a magistrate. The magistrate is authorized to certify the facts to the district court and issue an order requiring the party to appear before that court. The power to take evidence and determine punishment, however, is committed only to the district court.

In *Taberer,* the magistrate held an evidentiary hearing, found contempt, and then referred the matter to the district court, which treated the magistrate's decision as a proposed finding and recommendation pursuant to section 636(b)(1)(B). The court of appeals held that this procedure was not authorized by section 636(e), nor was it otherwise authorized by 18 U.S.C. § 3401(b), which provides that magistrates may conduct misdemeanor trials only with the defendant's specific, written consent. In so doing, the court refused to find a waiver of the consent requirement arising from the defendant's appearance without objection at the evidentiary hearing before the magistrate.

"Although failure to raise an objection in the first instance ordinarily waives the right to raise the matter on appeal, Congress has specified that criminal defendants must give their express, written consent to trial before a magistrate judge. *Therefore, cases inferring waiver of rights from a criminal defendant's failure to object do not apply here.* To hold that a criminal defendant may waive the Act's consent requirement implicitly is to ignore Congress's insistence upon explicit, written consent."

*Taberer,* 954 F.2d at 908 (emphasis added). Accordingly the court held that in proceeding without the defendant's consent, "the magistrate judge exceeded his authority under the Federal Magistrates Act," *id.,* and cited *In re Morrissey,* 717 F.2d 100, 103 (3d Cir.1983) as authority for "treating

improper reference to [a] magistrate judge as a jurisdictional defect to be noticed by [the] court on its own motion," *Taberer*, 954 F.2d at 908 n. 29. Similarly, the court in *Jaliwala*, 945 F.2d 221, rather than following its opinion in *United States v. Wey*, 895 F.2d 429 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990), upon which the majority also mistakenly relies, refused to infer consent to proceed before a magistrate under section 636(c)(1) from the conduct of the parties. " 'We see no virtue in "permit[ting] our jurisdiction to depend on inferences where both the statute and common sense call for precision." ' " *Jaliwala*, 945 F.2d at 224 (quoting *Silberstein v. Silberstein*, 859 F.2d 40, 42 (7th Cir.1988)).

Contrary to the above cases, the majority fails to perceive that while the limitations in the Magistrates Act do restrict a magistrate's authority to act in a case properly before the district court, the Act also restricts the district court's power to refer a matter to a magistrate. Congressionally imposed limits on the exercise of judicial power other than the delineation of subject matter jurisdiction are nonetheless jurisdictional. *See Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 330, 58 S.Ct. 578, 581, 82 L.Ed. 872 (1938); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3526 at 227–28 (2d ed. 1984).

> "[T]he jurisdiction of a magistrate to decide a case is not based solely on the consent of the parties, but derives from a proper designation by the district court. Because district court jurisdiction is statutory, its ability to make a proper designation of, and thereby to confer jurisdiction on, a magistrate is also a creature of statute."

*In re Morrissey*, 717 F.2d at 102. I simply cannot accept an analysis under which parties by their conduct may extend the jurisdiction of both the magistrate and the district court beyond that established by Congress.

Accordingly, I dissent.